# 23-0184-cv

## United States Court of Appeals

*for the*

## Second Circuit

LOUIS OBERLANDER, on behalf of himself and all others similarly situated, CHRISTOPHER UNDERWOOD, on behalf of himself and all others similarly situated, HENRY RODRIGUEZ,

*Plaintiffs-Appellants,*

ZENEYDA PATIN, on behalf of themselves and all others similarly situated,

*Plaintiff,*

– v. –

COINBASE GLOBAL INC., COINBASE, INC., BRIAN ARMSTRONG,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANTS-APPELLEES

JAY B. KASNER
LARA A. FLATH
ALEXANDER C. DRYLEWSKI
ABIGAIL E. DAVIS
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
(212) 735-3000

*Attorneys for Defendants-Appellees*

## <u>DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Defendants-Appellees Coinbase Global, Inc. ("CBGI") and Coinbase, Inc. ("CBI") state as follows:

CBGI is a publicly held corporation and does not have any parent corporation. To the best of CBGI's knowledge, no publicly held corporation owns 10% or more of CBGI's stock.

CBI is a wholly owned subsidiary of CBGI.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................v

INTRODUCTION ............................................................................1

COUNTERSTATEMENT OF THE ISSUES.............................................4

COUNTERSTATEMENT OF THE CASE.................................................5

    A.    The Parties, Platforms and User Agreement .........................................5

    B.    The Complaint References the UA, Admits That Users Transact With Each Other and Seeks to Recover Transaction Fees Paid Under the UA ......................................................................7

    C.    Underwood, Oberlander and Rodriguez Jointly Affirm the Complaint's Allegations in Seeking Appointment as Co-Lead Plaintiffs ............................................................................8

    D.    Plaintiffs Seek to Enjoin an Update to the UA ....................................9

    E.    The Parties Reach an Agreement That Resolves Plaintiffs' Purported Concerns Regarding the UA and Authorizes Plaintiffs to File an Amended Complaint of Limited Scope .................................10

    F.    Flouting the Stipulation, Plaintiffs Attempt to Change the Nature of Their Claims by Erasing the UA From the Amended Complaint.......11

    G.    The District Court Rejects Plaintiffs' Attempt to Evade the UA and Their Prior Allegations........................................................12

SUMMARY OF ARGUMENT ............................................................14

ARGUMENT ................................................................................16

I.    The District Court Correctly Held That Plaintiffs Fail to State a Claim.......16

    A.    Plaintiffs Fail to State a Securities Act Claim (JA-1005-07)..............17

        1.    No Coinbase Entity Passes Title ..............................................17

        2.    No Defendant Engaged in Successful Solicitation ...................19

B.    Plaintiffs Fail to State any Exchange Act Claims (JA-1010-20) ........23

II.    Plaintiffs Cannot Evade the UA or Their Prior Allegations.........................27

    A.    The User Agreement Is Integral to the AC Because of the Nature of Plaintiffs' Claims and Relief Sought...................................................28

    B.    Because Plaintiffs Possessed and Knew About The User Agreement and Relied Upon It in Bringing Suit, the Court Properly Considered It ...............................................................................30

    C.    Plaintiffs Cannot Erase or Directly Contradict Prior Allegations to Attempt to Avoid Dismissal ................................................................33

        1.    Plaintiffs Cannot Erase An Allegation in the Complaint That Incorporated the UA by Reference ............................................33

        2.    District Courts Can Consider Directly Contradictory Factual Allegations ................................................................................37

    D.    Plaintiffs' Attempts to Evade the Consequences of the User Agreement Are Unavailing ...................................................................46

        1.    The Court Need Not Decide Whether Plaintiffs Were Bound by Any Specific Version of the UA ...........................................46

        2.    The UA Does Not Purport to Waive Securities Claims ...........47

    E.    Plaintiffs' And *Amici*'s Arguments Regarding the PSLRA Are Unavailing ...................................................................................48

    F.    Plaintiffs' New Rule 15 Argument Is Incorrect .................................51

    G.    The Other Proposed "Tools" Are Insufficient to Deter the Type of Gamesmanship Present Here................................................................53

III.    Plaintiffs Fail to State Any Control Person Claims (JA-1008-10; JA-1020-22) ............................................................................................54

IV.    Plaintiffs Fail to Adequately Allege Any State Law Claims (JA-1022-40) ...............................................................................................55

CONCLUSION ........................................................................................57

CERTIFICATE OF COMPLIANCE..........................................................................58

## <u>TABLE OF AUTHORITIES</u>

Page(s)

### CASES

*Acuitas Capital, LLC v. Ideanomics, Inc.*,
    No. 23-cv-2124 (PAE),
    2023 WL 4373314 (S.D.N.Y. June 21, 2023) ................................................24

*Alpha Capital Anstalt v. Intellipharmaceutics International Inc.*,
    No. 19-cv-9270 (DLC),
    2020 WL 3318029 (S.D.N.Y. June 18, 2020) ..............................................19

*Anderson v. Binance*,
    No. 20-cv-2803 (ALC),
    2022 WL 976824 (S.D.N.Y. Mar. 31, 2022) .................................................18

*Andrews v. Metro North Commuter Railroad*,
    882 F.2d 705 (2d Cir. 1989) .........................................................................34

*Arkansas Public Employees Retirement System v. Bristol-Myers Squibb Co.*,
    28 F.4th 343 (2d Cir. 2022) ..........................................................................54

*In re Atlas Van Lines, Inc.*,
    209 F.3d 1064 (8th Cir. 2000) ......................................................................42

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007) ...........................................................................30

*Austin v. Ford Models, Inc.*,
    149 F.3d 148 (2d Cir. 1998) .........................................................................52

*In re Barnet*,
    737 F.3d 238 (2d Cir. 2013) .........................................................................26

*Bellefonte Re Insurance Co. v. Argonaut Insurance Co.*,
    757 F.2d 523 (2d Cir. 1985) .........................................................................34

*In re Bernard L. Madoff Investment Securities, LLC*,
    605 B.R. 570 (S.D.N.Y. 2019) .....................................................................24

*Blue Chip Stamps v. Manor Drug Stores*,
    421 U.S. 723 (1975)......................................................................................49

*Boykin v. United States*,
    No. 16-cv-4185 (CM),
    2020 WL 774293 (S.D.N.Y. Feb. 18, 2020) ...................................38

*Broder v. Cablevision Systems Corp.*,
    418 F.3d 187 (2d Cir. 2005) .........................................................28

*Buhrke Family Revocable Trust v. U.S. Bancorp*,
    No. 22-cv-9174 (JPC)(SLC),
    2023 WL 1879525 (S.D.N.Y. Feb. 10, 2023) ...............................50

*Calhoun v. Bergh*,
    769 F.3d 409 (6th Cir. 2014) .......................................................43

*Capri v. Murphy*,
    856 F.2d 473 (2d Cir. 1988) .........................................................22

*CBF Indústria de Gusa S/A v. AMCI Holdings, Inc.*,
    850 F.3d 58 (2d Cir. 2017) ...........................................................16

*In re Celsius Network LLC*,
    647 B.R. 631 (Bankr. S.D.N.Y. 2023) .........................................47

*Chen v. Antel Communications, LLC*,
    653 F. App'x 43 (2d Cir. 2016) ...................................................33

*Cohen v. Rosicki, Rosicki & Associates, P.C.*,
    897 F.3d 75 (2d Cir. 2018) ...........................................................38

*Coinbase, Inc. v. Bielski*,
    143 S. Ct. 1915 (2023)..............................................................5, 49

*Colliton v. Cravath, Swaine & Moore LLP*,
    No. 08-cv-0400 (NRB),
    2008 WL 4386764 (S.D.N.Y. Sept. 24, 2008) .............................38

*Committee of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*,
    322 F.3d 147 (2d Cir. 2003) .........................................................52

*Contant v. Bank of America Corp.*,
    No. 17-cv-3139 (LGS),
    2018 WL 5292126 (S.D.N.Y. Oct. 25, 2018)...............................41

*Delaney v. Farley*,
    No. 13-cv-9183 (VEC),
    2014 WL 5795562 (S.D.N.Y. Nov. 7, 2014) ................................................39

*Delaney v. Farley*,
    623 F. App'x 14 (2d Cir. 2015) ....................................................................39

*Dluhos v. Floating & Abandoned Vessel, Known as N.Y.*,
    162 F.3d 63 (2d Cir. 1998) ...........................................................................40

*Dudek v. Prudential Securities, Inc.*,
    295 F.3d 875 (8th Cir. 2002) ........................................................................36

*Duffey v. Twentieth Century Fox Film Corp.*,
    14 F. Supp. 3d 120 (S.D.N.Y. 2014) ............................................................28

*DuMont v. Litton Loan Servicing, LP*,
    No. 12-cv-2677 (ER),
    2015 WL 1061138 (S.D.N.Y. Mar. 11, 2015)...............................................35

*Ema Fin., LLC v. Vystar Corp.*,
    336 F.R.D. 75 (S.D.N.Y. 2020) ....................................................................23

*Employees' Retirement System of Government of V.I. v. J.P. Morgan Chase & Co.*,
    804 F. Supp. 2d 141 (S.D.N.Y. 2011) ..........................................................21

*Exchange National Bank of Chicago v. Touche Ross & Co.*,
    544 F.2d 1126 (2d Cir. 1976) .......................................................................31

*Fawzy v. Wauquiez Boats SNC*,
    873 F.3d 451 (4th Cir. 2017) ........................................................................43

*Fernandez v. School Board*,
    201 F. Supp. 3d 1353 (S.D. Fla. 2016)..........................................................43

*First Lincoln Holdings, Inc. v. Equitable Life Assurance Society*,
    164 F. Supp. 2d 383 (S.D.N.Y. 2001) ...........................................................31

*Forrest v. N.Y.C. Housing Authority*,
    No. 22-cv-6480 (JLR),
    2023 WL 3203646 (S.D.N.Y. May 2, 2023)...................................................39

*Franklin v. Kansas Department of Corrections*,
    160 F. App'x 730 (10th Cir. 2005) ................................................................43

*Frati v. Saltzstein*,
    No. 10-cv-3255 (PAC),
    2011 WL 1002417 (S.D.N.Y. Mar. 14, 2011) ............................................56

*Fry v. Napoleon Community Schools*,
    580 U.S. 154 (2017) ......................................................................................39

*Gallo Wine Distributors, L.L.C. v. Niebaum-Coppola Estate Winery, L.P.*,
    56 F. App'x 8 (2d Cir. 2003) ........................................................................26

*In re Global Crossing, Ltd. Securities Litigation*,
    No. 02-cv-910 (GEL),
    2005 WL 2990646 (S.D.N.Y. Nov. 7, 2005) ...............................................22

*Goldrich v. Masco Corp.*,
    No. 22-cv-3769 (KMK),
    2023 WL 2649049 (S.D.N.Y. Mar. 27, 2023) .............................................41

*Griffin v. PaineWebber, Inc.*,
    No. 99-cv-2292 (RWS),
    2001 WL 740764 (S.D.N.Y. June 29, 2001) ...............................................23

*Harsco Corp. v. Segui*,
    91 F.3d 337 (2d Cir. 1996) ...........................................................................48

*In re Herald*,
    730 F.3d 112 (2d Cir. 2013) ...................................................................35, 39

*Holsworth v. BProtocol Foundation*,
    No. 20-cv-2810 (AKH),
    2021 WL 706549 (S.D.N.Y. Feb. 22, 2021) ...................................19, 21, 23

*International Audiotext Network, Inc. v. AT&T Co.*,
    62 F.3d 69 (2d Cir. 1995) .............................................................................28

*International Controls Corp. v. Vesco*,
    556 F.2d 665 (2d Cir. 1977) .........................................................................40

*Jackson v. Fischer*,
    No. 11-cv-2753 (PJH),
    2015 WL 1143582 (N.D. Cal. Mar. 13, 2015) ............................................56

*James v. Bradley*,
    808 F. App'x 1 (2d Cir. 2020) ......................................................34

*James v. Gage*,
    No. 15-cv-106 (KMK),
    2019 WL 1429520 (S.D.N.Y. Mar. 29, 2019)................................................34

*Judon v. Travelers Property Casualty Co. of America*,
    773 F.3d 495 (3d Cir. 2014) .........................................................43

*In re Lehman Bros. Securities & ERISA Litigation*,
    681 F. Supp. 2d 495 (S.D.N.Y. 2010) ..........................................................21

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
    594 F.3d 383 (5th Cir. 2010) .........................................................48

*Lord Abbett Municipal Income Fund, Inc. v. Asami*,
    No. C-12-03694 (DMR),
    2014 WL 3417941 (N.D. Cal. July 11, 2014) ............................................56

*Lucente v. International Business Machines Corp.*,
    310 F.3d 243 (2d Cir. 2002) .........................................................52

*McMahan & Co. v. Wherehouse Entertainment, Inc.*,
    65 F.3d 1044 (2d Cir. 1995) .........................................................47

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
    547 U.S. 71 (2006).....................................................48, 49, 53, 54

*Miller v. Glanz*,
    948 F.2d 1562 (10th Cir. 1991) ....................................................43

*Miller v. Redwood Toxicology Laboratory, Inc.*,
    688 F.3d 928 (8th Cir. 2012) .......................................................42

*Mink v. Suthers*,
    482 F.3d 1244 (10th Cir. 2007) ...................................................43

*Morris v. City of New York*,
　　No. 20-cv-9314 (GBD),
　　2022 WL 2866450 (S.D.N.Y. July 21, 2022)................................................41

*In re Motors Liquidation Co.*,
　　957 F.3d 357 (2d Cir. 2020) ..........................................................45

*New Orleans Ass'n of Cemetery Tour Guides & Cos. v. New Orleans Archdiocesan Cemeteries*,
　　56 F.4th 1026 (5th Cir. 2023) ........................................................43

*New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*,
　　442 F.3d 101 (2d Cir. 2006) ..........................................................45

*Nolen v. Lufkin Industries, Inc.*,
　　469 F. App'x 857 (Fed. Cir. 2012) ...................................................43

*Omega Overseas Partners, Ltd. v. Griffith*,
　　No. 13-cv-4202 (RJS),
　　2014 WL 3907082 (S.D.N.Y. Aug. 7, 2014) .............................................24

*Orgone Capital III, LLC v. Daubenspeck*,
　　912 F.3d 1039 (7th Cir. 2019) ........................................................35

*Ortiz v. Fibreboard Corp.*,
　　527 U.S. 815 (1999)...................................................................51

*Palm Beach Strategic Income, LP v. Salzman*,
　　457 F. App'x 40 (2d Cir. 2012) ......................................................52

*Pinter v. Dahl*,
　　486 U.S. 622 (1988)..............................................................*passim*

*Poindexter v. EMI Record Group Inc.*,
　　No. 11-cv-559 (LTS)(JLC),
　　2012 WL 1027639 (S.D.N.Y. Mar. 27, 2012)............................................34

*Pompano-Windy City Partners, Ltd. v. Bear Stearns & Co.*,
　　794 F. Supp. 1265 (S.D.N.Y. 1992) ..................................................21

*In re ProShares Trust Securities Litigation*,
　　728 F.3d 96 (2d Cir. 2013) ..........................................................54

*Ransom v. San Jacinto Junior College*,
    No. 4:13-cv-1743 (MH),
    2014 WL 3843642 (S.D. Tex. Aug. 4, 2014) ................................................43

*Rivet v. Regions Bank of Louisiana*,
    522 U.S. 470 (1998) ...................................................................................39

*Rodriguez v. Sony Computer Entertainment America, LLC*,
    801 F.3d 1045 (9th Cir. 2015) ....................................................................41

*Romain v. Capital One, N.A.*,
    No. 13-cv-3035 (JS)(WDW),
    2013 WL 6407731 (E.D.N.Y. Dec. 9, 2013)................................................40

*Romano v. Kazacos*,
    609 F.3d 512 (2d Cir. 2010) ........................................................................49

*Royal American Managers, Inc. v. IRC Holding Corp.*,
    885 F.2d 1011 (2d Cir. 1989) ......................................................................21

*Scarola Malone & Zubatov LLP v. Verizon Communications, Inc.*,
    No. 14-cv-4518 (PKC),
    2015 WL 3884211 (S.D.N.Y. June 24, 2015)......................................37, 38

*Scarola Malone & Zubatov LLP v. McCarthy, Burgess & Wolff*,
    638 F. App'x 100 (2d Cir. 2016)...................................................................38

*Schindler Elevator Corp. v. United States ex rel. Kirk*,
    563 U.S. 401 (2011)....................................................................................26

*Shain v. Duff & Phelps Credit Rating Co.*,
    915 F. Supp. 575 (S.D.N.Y. 1996) ..............................................................21

*Shell v. Parrish*,
    448 F.2d 528 (6th Cir. 1971) .......................................................................43

*Spencer v. City of Cheyenne*,
    1 F. App'x 863 (10th Cir. 2001)...................................................................43

*Steed Finance LDC v. Nomura Securities International, Inc.*,
    No. 00-cv-8058 (NRB),
    2001 WL 1111508 (S.D.N.Y. Sept. 20, 2001) .............................................22

*Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt International B.V. v. Schreiber*,
407 F.3d 34 (2d Cir. 2005) ............................................................45

*Streit v. Bushnell*,
424 F. Supp. 2d 633 (S.D.N.Y. 2006) ..........................................41

*Sulzer Mixpac AG v. A&N Trading Co.*,
988 F.3d 174 (2d Cir. 2021) .........................................................55

*Swierkiewicz v. Sorema N.A.*,
534 U.S. 506 (2002)......................................................................52

*Tanzanian Royalty Exploration Corp. v. Crede CG III, Ltd.*,
No. 18-cv-4201 (LGS),
2019 WL 1368570 (S.D.N.Y. Mar. 26, 2019)..............................24

*Telebrands Corp. v. Del Laboratories, Inc.*,
719 F. Supp. 2d 283 (S.D.N.Y. 2010) ..........................................31

*Torcivia v. Suffolk County, New York*,
17 F.4th 342 (2d Cir. 2021) ..........................................................51

*In re Tribune Co. Fraudulent Conveyance Litigation*,
10 F.4th 147 (2d Cir. 2021) ....................................................17, 29

*Trilogy Properties LLC v. SB Hotel Associates LLC*,
No. 09-cv-21406 (KMW)(AJ),
2010 WL 7411912 (S.D. Fla. Dec. 23, 2010)...............................56

*United States ex rel. Foreman v. AECOM*,
19 F.4th 85 (2d Cir. 2021) ...............................................28, 29, 30

*Van Houtven v. Adams*,
No. 13-cv-1964 (CM),
2014 WL 1338066 (S.D.N.Y. Apr. 3, 2014) .................................37

*In re Vivendi Universal, S.A. Securities Litigation*,
381 F. Supp. 2d 129 (S.D.N.Y. 2003) ..........................................49

*In re Voyager Digital Holdings, Inc.*,
No. 22-10943 (MEW),
2022 WL 3146796 (Bankr. S.D.N.Y. Aug. 5, 2022).....................47

*Watkins v. United States*,
    854 F.3d 947 (7th Cir. 2017) ........................................................36

*West Run Student Housing Associates, LLC v. Huntington National Bank*,
    712 F.3d 165 (3d Cir. 2013) .........................................................44

*Wheeler v. Slanovec*,
    No. 16-cv-9065 (KMK),
    2019 WL 2994193 (S.D.N.Y. July 9, 2019).................................39

*Wilson v. Saintine Exploration & Drilling Corp.*,
    872 F.2d 1124 (2d Cir. 1989) ......................................................20

*Wright v. Green Tree Servicing LLC*,
    No. 14-cv-08493 (ALC),
    2016 WL 4098404 (S.D.N.Y. July 25, 2016)...............................34

*Youngers v. Virtus Investment Partners Inc.*,
    195 F. Supp. 3d 499 (S.D.N.Y. 2016) ..........................................20

*Zerman v. Jacobs*,
    510 F. Supp. 132 (S.D.N.Y. 1981) ...............................................24

## STATUTES

15 U.S.C. § 77*l*(a)(1)...........................................................................11, 17

15 U.S.C. § 77z-1 .............................................................35, 49, 50, 54

15 U.S.C. § 78u-4(a)(3)(B)(i) ..........................................................50

Cal. Corp. Code § 25501.5(a)(1) .....................................................56

Fla. Stat. Ann. § 517.12(1)...............................................................56

N.J. Stat. Ann. § 49:3-71(c) .............................................................56

## RULES

Fed. R. Civ. P. 1 ...............................................................................53

Fed. R. Civ. P. 11 .............................................................................53

Fed. R. Civ. P. 15 .............................................................................51

## **INTRODUCTION**

The only contract between any of the parties—the Coinbase Inc. User Agreement—forecloses Plaintiffs' claims and is properly considered on a motion to dismiss. Basic principles of civil procedure compel the conclusion that the District Court reached below.

Plaintiffs are users of the two Coinbase trading platforms. The User Agreement sets the terms for all user activity on these platforms and establishes that users transact with each other (not any Coinbase entity) and retain title to their digital assets. The User Agreement is fatal to Plaintiffs' claim that Defendants are statutory sellers under Section 12(a)(1) of the Securities Act of 1933. Plaintiffs' claims for rescission also fail because, under Section 29(b) of the Securities Exchange Act of 1934, only unlawful *contracts* may be rescinded—not unlawful *transactions* made pursuant to lawful contracts. As Judge Engelmayer recognized (and as Plaintiffs do not dispute), the User Agreement can be and is performed lawfully, thus foreclosing these claims.

From the outset of this case, Plaintiffs recognized the importance of the User Agreement. In seeking rescission to recover transaction fees that were paid, Plaintiffs expressly relied on and incorporated that agreement in the original complaint. All three Plaintiffs in turn affirmed the original complaint—and its reliance on the User Agreement—when seeking to be appointed co-lead plaintiffs.

All three Plaintiffs later sought emergency relief to enjoin an update to the User Agreement due to its purported impact *on this litigation*. And during those proceedings, all three Plaintiffs asserted "the primacy" of the governing User Agreement (Special Appendix ("SPA")-15) and represented that when they amended their complaint the scope would be limited and not change the nature of their claims.

Then, despite months of relying on the User Agreement and emphasizing its centrality, Plaintiffs amended their complaint to excise all references to it—even as Plaintiffs continued to seek rescission to recover transaction fees. The District Court recognized that Plaintiffs' attempts to plead around the User Agreement were solely to evade a necessary dismissal and therefore rightly considered it in dismissing Plaintiffs' federal securities claims.

Now, Plaintiffs' central argument on appeal is that once they scrubbed their amended complaint of references to the User Agreement, the District Court was *required* to pretend it did not exist. But the law does not blindfold courts that way. To the contrary, this Court's precedent expressly authorizes courts to consider integral documents on a motion to dismiss, whether or not plaintiffs reference them expressly. Here, the claims and relief that Plaintiffs have pursued throughout the litigation make the User Agreement an integral document: The User Agreement *exclusively* governs the parties' relationship on the trading platforms and it

2

establishes the very transaction fees that Plaintiffs seek to recover—making it the only contract capable of the rescission Plaintiffs seek.

Against the backdrop of Plaintiffs' gamesmanship—repeated recognition by all three Plaintiffs of the only existing contract between the parties in a case seeking rescission; direct reliance in the original complaint on that contract; a demand for emergency relief in which Plaintiffs asserted "the primacy" of that contract; the promise to the District Court that the nature of their claims would remain the same upon amendment—the law does not allow Plaintiffs' attempted erasure of the User Agreement from its amended complaint to be taken at face value alone. The District Court recognized Plaintiffs' chicanery for what it was and invoked a well-recognized exception in this Circuit in declining to credit Plaintiffs' newly manufactured allegations. The District Court correctly viewed those allegations as "strategically added to elude the facts pled in the Complaint and contained in the User Agreement that checkmate plaintiffs from adequately pleading [their claims]." (SPA-16.)

By insisting on appeal that the District Court was required to ignore the User Agreement as well as their prior allegations and conduct, Plaintiffs ask this Court to create an absolute rule that prohibits courts from dismissing plainly defective claims just because of an evasive later pleading. This Court should not mandate such a wooden and illogical outcome, which would create judicial inefficiency, promote gamesmanship and waste resources. The District Court correctly rejected Plaintiffs'

3

attempted sleight of hand, a decision that was both substantively right and procedurally proper.

For the reasons below, this Court should affirm the dismissal of the amended complaint.

## COUNTERSTATEMENT OF THE ISSUES

1. Whether the District Court properly dismissed Plaintiffs' federal securities claims because the properly-considered User Agreement provides that Defendants do not hold or pass title to digital assets traded on the Platforms, establishes that users transact with one another and not with any Coinbase entity and is a lawful contract that does not require performance of any illegal act.

2. Whether the District Court was permitted to consider the User Agreement where (i) the User Agreement is integral to Plaintiffs' claims, (ii) Plaintiffs' conduct concedes their knowledge of the User Agreement and its centrality to this litigation and (iii) Plaintiffs attempted to evade dismissal by simply erasing all prior references to the User Agreement and their directly contradictory factual allegations.

3. Whether the District Court correctly dismissed Plaintiffs' corresponding control person and state law claims.

# COUNTERSTATEMENT OF THE CASE

## A.     The Parties, Platforms and User Agreement

Coinbase Global, Inc. ("CBGI") has been a publicly traded U.S. company since April 2021. Armstrong is CEO of CBGI. (Joint Appendix ("JA")-790 ¶12.) CBGI's subsidiary Coinbase Inc. ("CBI") (JA-790 ¶11) operates the Coinbase and Coinbase Pro trading platforms ("Platforms") where thousands of users "can buy and sell cryptocurrencies [also known as digital assets or digital tokens] and government-issued currencies" and gain access to a broad and constantly expanding cryptoeconomy. *Coinbase, Inc. v. Bielski*, 143 S. Ct. 1915, 1918 (2023); (*see also* SPA-2-3).

To transact in or store hundreds of cryptocurrencies available on the Platforms, including the specific assets at issue ("Tokens"), users must agree to the User Agreement. (JA-88 ¶273); *see also Bielski*, 143 S. Ct. at 1918 ("When creating a Coinbase account, individuals agree to the terms in Coinbase's User Agreement."). The publicly available and periodically updated User Agreement ("UA") (JA-1044-81) provides the terms pursuant to which all users, including Plaintiffs, transact on the Platforms.[1]

---

[1]  The UA quoted here and cited by the Order is the December 20, 2021 version. The Order refers to it as the "December 2020 User Agreement." (SPA-13-14 n.5.)

Importantly, the UA establishes that users maintain title over the Tokens and transact with each other, not any Coinbase entity, and imposes the obligation to pay transaction fees:

- "*Title to Digital Currency shall at all times remain with you* and shall not transfer to Coinbase" and "[n]one of the Digital Currencies in your Digital Currency Wallet are the property of, or shall or may be loaned to [CBI]." (JA-1047 §2.6.1.)[2]

- "You control the Digital Currencies held in your Digital Currency Wallet." (JA-1047 §2.6.2.)

- "When you purchase (buy) or sell Digital Currency on the Coinbase Site, *you are not buying Digital Currency from [CBI] or selling Digital Currency to [CBI].* [CBI] acts as the agent, transacting on your behalf, to facilitate that purchase or sale *between you and other [CBI] customers.*" (JA-1048 §3.2.)

- "By using Coinbase Services you agree to pay all applicable fees." (JA-1048 §3.3.)

Plaintiffs transacted on the Platforms during the purported class period (JA-789-90, ¶¶7-9) and have continued to do so even after initiating this litigation (JA-395-407 (Oberlander); JA-418-19 (Rodriguez); Supplemental Appendix ("SA")-51-52 (Underwood).). They allege that the Tokens are unregistered "securities" and that Defendants violate federal and state securities laws by: (1) acting as statutory sellers of certain Tokens and (2) failing to register as a securities exchange or broker-

---

[2]   Unless otherwise indicated, all case and record emphasis is added and quotations omit all internal citations.

dealer.[3] Plaintiffs seek rescission to try to unwind potentially millions of transactions to recover a windfall of corresponding transaction fees. (*See*, *e.g.*, JA-1012 ¶965; JA-1014 ¶978; JA-1016 ¶988.) But the law permits only rescission of certain contracts and not transactions made pursuant to those contracts.

## B. The Complaint References the UA, Admits That Users Transact With Each Other and Seeks to Recover Transaction Fees Paid Under the UA

On October 8, 2021, Underwood, Oberlander and Zeneyda Patin filed a complaint ("Complaint," JA-11-96) alleging that CBGI (then the sole defendant) operated as an unregistered securities exchange and broker-dealer in violation of Sections 5 and 15(a)(1) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78e, 78(o)(a)(1), and corresponding California and Florida statutes. The Complaint expressly references the UA and seeks rescission to recover transaction fees pursuant to the UA under Section 29(b) of the Exchange Act, 15 U.S.C. § 78cc(b):

> Coinbase entered into contracts *via the Coinbase User Agreement . . . pursuant to which* Plaintiffs purchased Digital Asset Securities through Coinbase *and paid Coinbase fees . . . .*

---

[3] Defendants did not present and expressly reserved the issue of whether the Tokens are "securities." (SPA-9.) Defendants expressly maintain that the Tokens are not securities, and if addressed by the District Court in the future (if ever), these claims would fail on that ground independently as well.

(JA-88 ¶273; *see also* ¶¶276, 286 (seeking "damages, including fees paid"); ¶293 (seeking "damages for consideration and fees paid in connection").) The Complaint similarly acknowledges that users transact with each other, not any Defendant:

> Once money or digital assets ha[s] been sent to the Coinbase Platform and credited to the wallet of a Coinbase Platform user, a Coinbase Platform [user] can enter into trade agreements *with other Coinbase Platform users* for purchases and sales of digital assets.

(JA-17 ¶27; *see also* JA-19 ¶32 (Coinbase Pro).)

## C.     Underwood, Oberlander and Rodriguez Jointly Affirm the Complaint's Allegations in Seeking Appointment as Co-Lead Plaintiffs

Subsequently, Underwood and Oberlander, joined by Rodriguez, jointly moved for appointment as co-lead plaintiffs. (SA-1-2.) All three Plaintiffs extensively cited the Complaint, including the specific allegations that users entered into the UA and transacted with other users rather than any Coinbase entity. (SA-9-10, 15-16 (citing ¶¶2-3, 12-15, 26-37, 53-71, 262, 268-301).)

While Plaintiffs (and in particular Rodriguez) now disavow the Complaint, the joint motion represented that the Complaint was "the product of substantial investigation" and that proposed co-lead counsel "invested substantial time" in preparing it. (SA-11-12.) Rodriguez himself affirmed that he "reviewed the Complaint" and "authorize[d] the filing of a *comparable* complaint on [his] behalf." (JA-412.)

On the basis of this filing, the District Court appointed Plaintiffs co-lead plaintiffs. (JA-426-36.)

**D. Plaintiffs Seek to Enjoin an Update to the UA**

Mere weeks later, all Plaintiffs sought emergency relief to enjoin a normal course update to the UA. (SA-55-70.) They asserted that "[t]he proposed amendment to the existing user agreement . . . vastly increase[d] the scope of the present arbitration clause" and was "directly aimed at undermining *this litigation*." (SA-59, 62.) Plaintiffs also argued that "[i]f Coinbase is not prevented from imposing these changes to the dispute resolution provisions of the [UA], Plaintiffs and the putative Class will suffer irreparable harm." (SA-67.) Plaintiffs (including Rodriguez) also specifically incorporated "the pleadings" in their request for relief. (SA-53-54.)

In response, the District Court issued an expedited briefing schedule noting Plaintiffs' position that "amendments to defendant Coinbase's user agreement" have "potential effects on *this pending litigation*." (SA-71.) CBGI's opposition explained that (i) the correct counterparty to the UA was then-non-party CBI, *not* CBGI, (ii) the UA has long included dispute resolution provisions similar to the one challenged and (iii) CBI updates the UA in the ordinary course. (SA-72-98.) CBGI also submitted 31 versions of the UA covering August 2017 through December 2020 (SA-100-05) in response to the District Court's express request (SA-99).[4]

---

[4] Plaintiffs continue to mischaracterize CBI's update to the terms of the UA as a "wrongful" attempt to "impede this litigation." This disparagement is unfounded. Defendants never attempted to "impede this litigation" by updating a longstanding dispute resolution clause as it had done previously.

*(cont'd)*

**E.    The Parties Reach an Agreement That Resolves Plaintiffs' Purported Concerns Regarding the UA and Authorizes Plaintiffs to File an Amended Complaint of Limited Scope**

At the hearing to ascertain the potential impact of the amended UA on Plaintiffs in "this litigation and to the putative class" (JA-744, 7:21-24), Judge Engelmayer expressly invited the parties to reach resolution, which the parties did. (JA-760, 23:5-15.) Plaintiffs' counsel specifically sought to ensure that *CBI*—the only counterparty to the UA but then a non-party to the litigation—would abide by any representations. (JA-777-78, 40:8-41:19.) In turn, Defendants specifically sought to ensure that in agreeing that CBI would be bound by a not-yet-filed amended complaint, that complaint would be consistent with the allegations already made and affirmed by Plaintiffs. Plaintiffs' counsel represented in "full disclosure" that any amendment would be limited in scope, the new claims "follow logically *as a factual matter* from the previously pled claims" and the "most significant of the changes" would be only to "add Section 12(a)(1) claims." (JA-770-71, 33:22-34:4; *see also* JA-771, 34:16-21.) On that basis, the parties resolved the dispute.

As the stipulation memorialized:

Lead Plaintiffs made various representations as to the nature and scope of the potential amendments in the forthcoming consolidated amended

---

Notwithstanding CBI's ability to properly do so, Defendants accepted the District Court's invitation to moot the controversy by agreeing not to rely on this provision of the January 2022 version for purposes of this litigation. (*Infra* 10-11.)

10

complaint . . . , including that they intend to amend to (i) name current non-party Coinbase, Inc. as a defendant; (ii) substitute Mr. Rodriguez, who is an existing member of the putative class and a Lead Plaintiff, as a named plaintiff; (iii) amend the Digital Assets that will be the subject of the Amended Complaint in connection with the addition of Mr. Rodriguez as a named plaintiff; (iv) allege claims under Section 12(a)(l) of the Securities Act of 1933 and state law analogues; (v) allege claims relating to controlling person liability; and (vi) allege additional state securities claims analogous to those previously asserted; *but will not otherwise change the general nature of the claims asserted in the Action* . . . .

(JA-734-35.) In return, CBGI and CBI agreed that they would not "in this Action or in a related action or proceeding seek to apply . . . the dispute resolution provisions of the updated [UA] to the Lead Plaintiffs or any other putative class member." (JA-735.)

## F. Flouting the Stipulation, Plaintiffs Attempt to Change the Nature of Their Claims by Erasing the UA From the Amended Complaint

Plaintiffs subsequently filed the Amended Complaint ("AC," JA-781-1041) renewing their Exchange Act claims; adding Defendants CBI and Armstrong; adding a claim under Section 12(a)(1) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77*l*(a)(1), with respect to certain Tokens; adding claims based on CBGI's and Armstrong's purported "control" of CBI; renewing claims under California and Florida law; and adding claims under New Jersey law.

Contrary to Plaintiffs' representations that "the general nature of the claims" would not change, the AC attempts to materially alter and directly contradicts the Complaint. Despite maintaining claims for rescission to recover transaction fees, the

AC erases all references to the UA. While the Complaint admits users transact with other users (JA-17 ¶27; JA-19 ¶32), the AC alleges the opposite—asserting for the first time that buyers and sellers on the Platforms "are *not* in privity with one another" (JA-795 ¶33 (emphasis in original)), and that "[c]ustomers on Coinbase transact solely with Coinbase itself" (JA-1006 ¶936).

## G. The District Court Rejects Plaintiffs' Attempt to Evade the UA and Their Prior Allegations

The District Court granted Defendants' motion to dismiss in its entirety. (SPA-1-27.) In dismissing the Section 12(a)(1) claim with prejudice, the District Court held that Plaintiffs fail to allege adequately that Defendants were statutory sellers of securities by virtue of passing title to Plaintiffs and any contrary allegations are belied by the Complaint and "flatly contradict[ed]" by the UA. (SPA-9-17.) The District Court further held that the AC fails the second prong of *Pinter* because it fails to allege that Defendants directly solicited Plaintiffs' purchase. (SPA-17-19.)

The District Court also dismissed the Exchange Act claims with prejudice because the UA, as the only agreement at issue, is lawful on its face. (SPA-23.) Under Section 29(b), only unlawful contracts may be rescinded—not unlawful transactions made pursuant to lawful contracts. (SPA-21.) The District Court rejected Plaintiffs' argument that each transaction formed an independent "contract" subject to rescission as lacking support in the AC or case law. (SPA-22.) The District Court held that the UA is the only contract capable of rescission and does not

12

necessitate illegal acts. (SPA-22-33.) Indeed, Plaintiffs admit to continuing to use the Platforms since filing suit and that the Platforms have uses that do not require trading the Tokens. (SPA-23.)

In dismissing, the District Court acknowledged that an amended complaint *ordinarily* supersedes the original pleading but held that this case fit a well-recognized exception in this Circuit: because the amended allegations "effectively repudiate diametrically contrary allegations in plaintiffs' original Complaint, in an apparent attempt to evade dismissal," the original allegations can be considered. (SPA-12-13 ("[T]he Complaint painted a very different portrait of Coinbase, with factual allegations that undermine the AC's thesis that Coinbase was a statutory seller.").) The District Court also observed that the UA could be considered because it forms the basis for Plaintiffs' contractual rescission claims (SPA-14) and "was put on the case record *by plaintiffs* . . . in seeking emergency relief" (SPA-15 (emphasis in original)). Accordingly, having "asserted the primacy" of the UA, Plaintiffs could not "'plead around it by refusing to make reference to it' in the AC." (SPA-15.) Thus, the District Court "need not, and d[id] not, accept the AC's contrary allegations, which unavoidably emerge[d] as strategically added to elude the facts pled in the Complaint and contained in the User Agreement." (SPA-16.)

Having dismissed the primary federal claims with prejudice, the District Court dismissed the control person claims. It also declined to exercise supplemental

jurisdiction over the corresponding state law claims, dismissing them without prejudice. (SPA-19, 23-25.) This appeal followed.

## SUMMARY OF ARGUMENT

**I.** The District Court correctly held that Plaintiffs fail to state a claim under the Securities Act or Exchange Act.

**A.** To plead that Defendants are "statutory sellers" of unregistered securities in violation of Section 12(a)(1) of the Securities Act, Plaintiffs must allege that Defendants directly passed title or successfully solicited their purchase. The UA, however, demonstrates that users transact on the Platforms with one another—not any Coinbase entity—and users retain title to their Tokens. Plaintiffs' theory that Defendants successfully solicited any purchases is equally meritless. It is grounded in nothing more than the insufficient allegation that "Coinbase" acts as an "intermediary" on the Platforms. And crediting such an insufficient allegation would result in a dramatic expansion of liability for collateral participants in purported securities transactions, contrary to the Supreme Court's holding in *Pinter v. Dahl*, 486 U.S. 622 (1988).

**B.** The District Court correctly dismissed Plaintiffs' claims under Section 29(b) of the Exchange Act, which allows for rescission only of unlawful *contracts*, not unlawful *transactions* made pursuant to lawful contracts. As the

14

District Court recognized (and as Plaintiffs do not dispute), the UA can be and is performed lawfully in myriad ways, thus foreclosing Plaintiffs' claims.

**II.    Plaintiffs cannot avoid the UA or their prior allegations through artful and deceptive pleading.**

**A.    The UA is integral to Plaintiffs' claims.** Plaintiffs do not dispute that the AC seeks rescission and to recover the transaction fees incurred when using the Platforms. Because the only contract that exists between the parties is the UA and the obligation to pay transaction fees is imposed and governed by the UA, the Amended Complaint necessarily relies upon and incorporates the UA, regardless of whether it is expressly mentioned.

**B.    Plaintiffs' conduct shows both that they knew about the UA and its centrality.** In addition to relying upon the Complaint (including allegations referring to the UA) in seeking appointment as co-lead plaintiffs, Plaintiffs affirmatively sought emergency relief, asserting that an update to the UA would "undermin[e] *this litigation*." (SA-62.)

**C.    Plaintiffs referenced and relied on the UA in the Complaint and cannot escape it by attempting to erase all mention of it in a subsequent pleading.** The District Court also properly considered the Complaint in the face of directly contradictory allegations in the AC designed to evade dismissal. While the District Court acknowledged that an amended pleading ordinarily supersedes an earlier one,

it correctly held that Plaintiffs' conduct warranted applying a well-established exception. This Court should continue to uphold district courts' discretion to do so. The policy arguments made by Plaintiffs and *Amici* are unavailing.

**III.** Having properly dismissed Plaintiffs' federal claims, the District Court correctly dismissed their federal control person claims.

**IV.** The District Court's dismissal of Plaintiffs' state law claims should be affirmed because they rise and fall with Plaintiffs' federal claims. Plaintiffs also fail to plead the requisite contractual privity.

Defendants presented additional reasons for dismissal that the District Court did not reach in light of its holdings. Should this Court decline to affirm, it should remand for consideration of these arguments in the first instance. *See CBF Indústria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58, 79 (2d Cir. 2017).

## **ARGUMENT**

## I. **THE DISTRICT COURT CORRECTLY HELD THAT PLAINTIFFS FAIL TO STATE A CLAIM**

Plaintiffs attempt to overcomplicate this appeal. They present eight separate issues and characterize the Order as imposing a sweeping new rule of civil procedure. Not so. The District Court correctly held that Plaintiffs fail to state a

16

federal securities claim, and Plaintiffs' state law claims fail for the same reasons.[5]

## A.  Plaintiffs Fail to State a Securities Act Claim (JA-1005-07)

Plaintiffs fail to allege either of the Section 12(a)(1) requirements set forth in *Pinter*. (SPA-11-19.) Section 12(a)(1) authorizes claims only against one who "offers or sells" an unregistered security. 15 U.S.C. § 77*l*(a)(1). A defendant is a "statutory seller" only if it (1) "passed title, or other interest in the security, to the buyer for value," or (2) "successfully solicit[ed] the purchase [of a security], motivated at least in part by a desire to serve [its] own financial interests or those of the securities' owner." *Pinter*, 486 U.S. at 642, 647. Defendants did neither.

### 1.  No Coinbase Entity Passes Title

Under *Pinter*'s first prong, liability attaches to "only the buyer's immediate seller," none of whom are alleged to be parties here. 486 U.S. at 644 n.21; *id.* at 642 (noting that Section 12 "contemplates a buyer-seller relationship not unlike traditional contractual privity"). Although the AC summarily asserts that "Coinbase" is the "actual seller" (JA-789 ¶6) and "the counterparty in every transaction" (JA-999 ¶910), those allegations are—as the District Court properly held—"flatly contradicted" by the terms of the UA. (*Supra* 6 (citing JA-1048 §3.2; JA-1047 §2.6.1).) Therefore, any suggestion that CBI (much less CBGI) passes title such that

---

[5]  This Court reviews *de novo* a district court's dismissal for failure to state a claim. *E.g.*, *In re Trib. Co. Fraudulent Conv. Litig.*, 10 F.4th 147, 159 (2d Cir. 2021), *cert. denied sub nom. Kirschner v. FitzSimons*, 142 S. Ct. 1128 (2022).

either could be a statutory seller under *Pinter* is directly refuted by the UA and the District Court could not credit the AC's contradictory allegations. (SPA-15-16.)[6]

The relationship described by the UA is also consistent with Plaintiffs' admissions in the Complaint, which all Plaintiffs represented would not change in nature. The Complaint alleged that users transact "*with other Coinbase Platform users* for purchases and sales of digital assets," not any Defendant. (JA-17-18 ¶27; *see also* JA-19 ¶32 (Coinbase Pro).) It also alleged that users "purchased [Tokens] *through* Coinbase" (JA-88 ¶273), establishing the Platforms' role as, at most, a mere intermediary. *See Pinter*, 486 U.S. at 650 ("Congress did not intend that the section impose liability on participants[ ] collateral to the offer or sale."). These allegations independently render impossible any allegation of privity or passing of title between Plaintiffs and any Defendant and bar Plaintiffs' Section 12(a)(1) claims. (SPA-13-16.)

---

[6] The District Court also cited *Anderson v. Binance*, 2022 WL 976824 (S.D.N.Y. Mar. 31, 2022), *appeal filed* No. 22-972 (2d Cir. May 2, 2022), which held that the allegation that "Binance users 'must first transfer the desired crypto-assets to Binance's control by executing a transaction on the Ethereum blockchain' . . . d[id] not support the assertion" that "[d]efendants are also statutory sellers because they passed title to [p]laintiffs . . . ." *Id.* at 3 n.2. The pending *Binance* appeal does not relate to this aspect of the Order.

### 2. No Defendant Engaged in Successful Solicitation

Plaintiffs' Section 12(a)(1) claims also fail because Plaintiffs cannot plead that CBI or CBGI successfully solicited Plaintiffs' purchases. As the Supreme Court emphasized when establishing a narrowed standard in *Pinter*, "Congress did not intend that . . . section [12] impose liability on participants collateral to the offer or sale" or even those whose conduct constituted "substantial participation in the sales transaction." 486 U.S. at 650-51. Thus, a plaintiff must allege that "he was *directly contacted* by Defendants [and] purchased securities as a result." (SPA-17-18 (citing *Holsworth v. BProtocol Found.*, 2021 WL 706549, at *3 (S.D.N.Y. Feb. 22, 2021)).)

The AC does not allege that CBI or CBGI had any direct contact with any specific "investors," much less with Plaintiffs themselves, to solicit any transactions. *See Alpha Cap. Anstalt v. Intellipharmaceutics Int'l Inc.*, 2020 WL 3318029, at *4 (S.D.N.Y. June 18, 2020) ("[P]laintiffs must show that [defendant] actually solicited their investment . . . ."). Instead, the AC alleges generically that "Coinbase" "promote[d] the sale of Tokens by providing users with descriptions of each Token and its purported value proposition," "participated in direct promotions, including 'airdrops' of free Tokens designed to increase trading volume," "wr[ote] news updates on price movements of the Tokens" and "link[ed] to stories about the Tokens published across the internet." (JA-999 ¶911.) The District Court correctly held that these activities, even if credited, "are of a piece with the marketing efforts,

19

'materials,' and 'services' that courts, applying *Pinter*'s second prong, have held insufficient to establish active solicitation by a defendant." (SPA-18 (collecting cases).)

Plaintiffs incorrectly argue that the allegation that the "market price" for Tokens was "displayed" on the Platforms supports the conclusion that this "real-time pricing data . . . directly facilitated and encouraged each trade." (Br. 52.) But providing pricing data, news updates and the like for a large number of digital assets available on the Platforms shows nothing more than that CBI serves as a repository of information. It does not show that Defendants encouraged any particular user to purchase any particular Token. Indeed, a "ministerial act" like displaying prices "cannot under any view be considered the kind of solicitation necessary under *Pinter*" and courts have rejected claims to the contrary. (SPA-18 (citing *Wilson v. Saintine Expl. & Drilling Corp.*, 872 F.2d 1124, 1126-27 (2d Cir. 1989)).) In *Youngers v. Virtus Investment Partners, Inc.*, the court granted a motion to dismiss because allegations about distribution of marketing materials containing detailed performance metrics, back testing and projected returns for a specific investment through a company's website and other channels were insufficient to subject the company to Section 12 liability. 195 F. Supp. 3d 499, 522 (S.D.N.Y. 2016) (SPA-18). Although Plaintiffs assert that Judge Engelmayer "misinterpret[ed]" *Winters* and *Youngers* (Br. 51), they do not point to a single case where any of their alleged

forms of solicitation were found sufficient to establish liability under the second prong of *Pinter*. Instead, courts routinely dismiss on the basis of such insufficient allegations. *See*, *e.g.*, *Emps.' Ret. Sys. of Gov't of V.I. v. J.P. Morgan Chase & Co.*, 804 F. Supp. 2d 141, 151 (S.D.N.Y. 2011) (allegations that defendants "promoted and sold [and] solicited sales . . . for financial gain" deemed insufficient); *Holsworth*, 2021 WL 706549, at *1 (no solicitation alleged where defendants "'continuous[ly] and systematic[ally] market[ed] [specific tokens],' including by publishing information 'designed to make [them] appear to be favorable investments'").[7]

Despite faulting the District Court for not citing cases involving "a defendant's communication of real-time pricing data" (Br. 52), Plaintiffs themselves fail to cite any. Nor do Plaintiffs support that charging transaction fees means that

---

[7] A long line of cases narrowly construes "solicitation." *See, e.g.*, *Royal Am. Mgrs., Inc. v. IRC Holding Corp.*, 885 F.2d 1011, 1016-17 (2d Cir. 1989) (no Section 12 liability for an attorney who did not initiate or negotiate sale and thus did not "solicit[ ]" it); *In re Lehman Bros. Sec. & ERISA Litig.*, 681 F. Supp. 2d 495, 500 (S.D.N.Y. 2010) ("While it doubtless is true that [an] architect or builder had a lot to do with the characteristics of [a] house—no doubt characteristics that made it an attractive and salable product—they cannot properly be said to have participated in any legally relevant sense in its resale down the line."), *aff'd sub nom. In re Lehman Bros. Mortg.-Backed Sec. Litig.*, 650 F.3d 167 (2d Cir. 2011); *Shain v. Duff & Phelps Credit Rating Co.*, 915 F. Supp. 575, 577 (S.D.N.Y. 1996) ("[A]bsent an allegation that defendant had direct contact with plaintiff, defendant, as a matter of law, is not subject to § 12 liability."); *see also Pompano-Windy City Partners, Ltd. v. Bear Stearns & Co.*, 794 F. Supp. 1265, 1283-85 (S.D.N.Y. 1992).

CBI "earn[s] a commission . . . for *persuading their clients to make a particular investment* . . . ." (Br. 52.) That a defendant "acted for its own financial gain," which is true for nearly all commercial activity, is insufficient absent more to allege active solicitation. *See Steed Fin. LDC v. Nomura Sec. Int'l, Inc.*, 2001 WL 1111508, at *7 (S.D.N.Y. Sept. 20, 2001); *In re Glob. Crossing, Ltd. Sec. Litig.*, 2005 WL 2990646, at *11 (S.D.N.Y. Nov. 7, 2005) (dismissing Section 12 claim despite defendant "undoubtedly ha[ving] a substantial financial interest in the sale").

Further, even if Plaintiffs had pled active solicitation—and they did not—the District Court properly dismissed their claim because "[the AC] does not plead that [P]laintiffs purchased and sold the Tokens *as a result* of such solicitation . . . ." (SPA-19 (citing *Steed*, 2001 WL 1111508, at *7 (dismissing claim where plaintiff "failed to allege that plaintiff in fact purchased the [securities] as a result of [defendant's] solicitation")).) Plaintiffs' only response is to cite *Pinter*'s warning that Congress did not "inten[d] to incorporate tort law doctrines of reliance and causation into § 12[(a)](1)." (Br. 52.) But Plaintiffs ignore that *Pinter* itself mandates that "liability extends only to the person who *successfully solicits* the purchase." 486 U.S. at 647; *accord Capri v. Murphy*, 856 F.2d 473, 479 (2d Cir. 1988) ("[P]laintiffs must show that [defendant] actually solicited their investment . . . ."). Alleging that "[c]lass members purchased Tokens at the 'market price *as displayed on the Coinbase Platform* at the time of placement of the order'" (Br. 53) is not enough to

22

plead that any supposed solicitation was successful. *See Griffin v. PaineWebber, Inc.*, 2001 WL 740764, at *2 (S.D.N.Y. June 29, 2001) ("[Plaintiff] must allege not only that [defendant] actively solicited investors with respect to this transaction but that [plaintiff] purchased securities as a result of [the] solicitation."); *Holsworth*, 2021 WL 706549, at *3 (quoting *Griffin*). Without such allegations, Plaintiffs cannot plead, as a matter of law, that Defendants solicited the purchase of any Token. (SPA-19.)

## B.    Plaintiffs Fail to State any Exchange Act Claims (JA-1010-20)

Plaintiffs' Section 29(b) claims fail because the only contract between the parties—the UA—does not *require* a prohibited or unlawful transaction. (SPA-21-23.) Although Section 29(b) permits rescission of an *illegal* contract that violates Exchange Act provisions, plaintiffs must show "that (1) the contract involved a prohibited transaction, (2) [they are] in contractual privity with the [defendant] and (3) [they are] in the class of persons the Act was designed to protect." *Ema Fin., LLC v. Vystar Corp.*, 336 F.R.D. 75, 81 (S.D.N.Y. 2020).[8] Critically, "'only unlawful

---

[8]    Plaintiffs preemptively rebut that "there is no private right of action under Section 29(b)." (Br. 56.) Defendants never made that argument. Instead, they argued there is no private right of action *under Section 5 or 15(a)*. (District Court Docket ("SDNY-ECF") 59 at 13-17; SDNY-ECF 67 at 7-8.) Plaintiffs also incorrectly claim that Defendants only challenged the first element of Section 29(b) below. (Br. 53.) Defendants also contested contractual privity. (SDNY-ECF 59 at 19-20; SDNY-ECF 67 at 10.)

contracts may be rescinded, *not unlawful transactions made pursuant to lawful contracts.*'" *In re Bernard L. Madoff Inv. Sec., LLC*, 605 B.R. 570, 591 n.11 (S.D.N.Y. 2019), *aff'd*, 830 F. App'x 669 (2d Cir. 2020); (*see also* SPA-21 (same (quoting *Zerman v. Jacobs*, 510 F. Supp. 132, 135 (S.D.N.Y. 1981), *aff'd*, 672 F.2d 901 (2d Cir. 1981))).) Plaintiffs cannot plead that the UA is an unlawful contract.

Courts routinely hold that contracts are "unenforceable under § 29(b) only when the contract 'on its face' *requires* the performance of an illegal act." *Tanzanian Royalty Expl. Corp. v. Crede CG III, Ltd.*, 2019 WL 1368570, at *13 (S.D.N.Y. Mar. 26, 2019); *see also Omega Overseas Partners, Ltd. v. Griffith*, 2014 WL 3907082, at *4 (S.D.N.Y. Aug. 7, 2014) ("[A] contract can be voided under § 29(b) only where the 'agreement cannot be performed without violating the securities laws . . . .'"); *Acuitas Cap., LLC v. Ideanomics, Inc.*, 2023 WL 4373314, at *1 (S.D.N.Y. June 21, 2023) (When the contract between the parties "permit[s], but . . . d[oes] not mandate [the sale of] securities purchased thereunder . . . [it] is not an inherently unlawful contract subject to rescission under Section 29(b)."). By Plaintiffs' own admissions, transacting on the Platforms does not *require* unlawful conduct: "[P]laintiffs admit to continuing to use the [Platforms] since filing the original lawsuit" and admit that the Platforms "ha[ve] other uses beyond the trading of [alleged] securities, including the trading of crypto-commodities (such as Bitcoin or Ethereum) that are not the subject of this suit." (SPA-23; JA-515-16 n.3; *see also*

JA-800 ¶49.) Because users can transact in products that are not alleged securities or not transact at all, the District Court correctly held that "'the customer agreement at issue here is a lawful one.'" (SPA-23 (quoting *Madoff*).)

Plaintiffs try to avoid this result by arguing that "each purchase or sale of a Token constitutes a separate contract." (Br. 54.) The District Court properly rejected Plaintiffs' contention as factually unsupported, even in the AC:

> Plaintiffs' notion that each transaction involving any one of the Tokens is the "contract" implicated by their Section 29(b) claims lacks factual support—the AC does not, for example, identify any transaction-specific contract.

(SPA-22.) Nowhere does the AC plead the terms of any purported transaction-specific contracts. And there is no dispute that Plaintiffs seek to recover transaction fees paid pursuant to the UA, not any vague and unidentified "contract" underlying individual transactions. (JA-1012-14 ¶¶965, 978; JA-1048 §3.3 ("By using Coinbase Services you agree to pay all applicable fees.").)

The District Court also correctly held that Plaintiffs' position "is without support in the case law." (SPA-22.) Rather than identify any controlling case law, which does not exist,[9] Plaintiffs attempt to analogize to retail shopping. (Br. 54-55.)

---

[9] Instead of grappling with the case law, Plaintiffs make the same circular argument they did below—that contrary cases involve the "*sole* contract" between the parties. (Br. 55.) The District Court properly rejected this argument because there is only one contract between the parties: the UA. (SPA-22.)

The analogy fails not only because users transact among one another on the Platforms, not with Defendants (*supra* 17-18), but also on the face of Section 29(b)'s text, which relates to contracts rather than purchases or sales. *See, e.g.*, *Schindler Elevator Corp. v. U.S. ex rel. Kirk*, 563 U.S. 401, 407 (2011) ("Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose."); (*Cf.* Br. 58 (acknowledging that "Section 29(b) of the Exchange Act applies to '[e]very *contract* made in violation of any provision [of the Exchange Act]' . . . . By contrast, [Plaintiffs'] state law claims apply to every *purchase or sale* of a security." (quoting 15 U.S.C. § 78cc(b)) (emphasis in original))).[10] Thus, if Congress wanted Section 29(b) to apply to individual transactions, it would have said so. *See In re Barnet*, 737 F.3d 238, 246 (2d Cir. 2013) ("[T]he preeminent canon of statutory interpretation requires us to 'presume that the legislature says in a statute what it means and means in a statute what it says there.'"). Instead, because Section 29(b) does not apply to individual transactions

---

[10]  *Gallo Wine Distribs., L.L.C. v. Niebaum-Coppola Est. Winery, L.P.*, 56 F. App'x 8 (2d Cir. 2003) (summary order) (Br. 54-55), is distinguishable because the "discrete agreements to purchase goods[ ] were separate and distinct from the underlying contractual obligation, under the distributorship agreement," which governed the notice requirements for ending the distributorship relationship. *Id.* at 10. In contrast, the UA governs the terms of the relationship here.

and because the UA is the only contract for purposes of Section 29(b) and "[does] not necessitate illegal acts," Plaintiffs' claims fail. (SPA-23.)

## II.  PLAINTIFFS CANNOT EVADE THE UA OR THEIR PRIOR ALLEGATIONS

Unable to dispute that once the UA is considered it is fatal to their claims, Plaintiffs spend most of their Brief urging this Court to ignore the UA and their prior allegations. (Br. 36-47, 16-35.) Plaintiffs' efforts to scrub these materials from the litigation solely to avoid an otherwise inevitable dismissal should be rejected. The UA is fundamental to Plaintiffs' claims: it is an integral document that establishes the terms of Plaintiffs' transactions on the Platforms and forms the entire basis for their demand to recover transaction fees as damages. Plaintiffs' own actions, including seeking to enjoin an update to the UA, show that they knew about the UA and believed it central to this litigation. The UA is also incorporated by reference in the Complaint and cannot simply be "erased"—even at the motion to dismiss stage— by a subsequent pleading. Thus, the District Court did not have to and rightly did not accept the allegations in the AC that "unavoidably emerge as strategically added to elude the facts pled in the Complaint and contained in the User Agreement." (SPA-16.)

**A.    The User Agreement Is Integral to the AC Because of the Nature of Plaintiffs' Claims and Relief Sought**

The UA is properly considered because courts may consider documents on a motion to dismiss—even if not explicitly referenced—if the complaint "relies heavily upon its terms and effect," thereby rendering it "integral." *Int'l Audiotext Network, Inc. v. AT&T Co.*, 62 F.3d 69, 72 (2d Cir. 1995). In the face of an integral document, the Court "may look to the agreement itself" rather than accept the AC's allegations about the nature of that relationship as true, precisely as the District Court did. *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005).

Plaintiffs do not (because they cannot) dispute the propriety of a court doing so.[11] Their own caselaw recognizes as much. *See U.S. ex rel. Foreman v. AECOM*, 19 F.4th 85, 107 (2d Cir. 2021) (Br. 36-39) ("In most instances where this [integral document] exception is recognized, *the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls*, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint."), *cert denied*, 142 S. Ct. 2679 (2022); *see also Duffey v. Twentieth Century Fox Film Corp.*, 14 F. Supp. 3d 120, 124 n.1 (S.D.N.Y. 2014) ("This rule

---

[11]    *Amici*, who largely repeat the arguments made by Plaintiffs, likewise concede that consideration of an integral document is appropriate. (Brief for *Amici Curiae* Civil Procedure Scholars in Support of Plaintiffs-Appellants ("Amici") 28 n.7.)

prevents plaintiffs from surviving 12(b)(6) motions because of 'clever drafting' alone . . . .").

Despite Plaintiffs' attempt to plead around the UA, it is plainly relevant as the AC continues to assert claims for rescission, just as the Complaint did. (SPA-14 ("Insofar as plaintiffs sought contractual recission of the transactions, the contractual obligations between Coinbase and plaintiffs—as set out in the User Agreement—are central to plaintiffs' claims in the Complaint, which 'rel[ies] on the terms and effect of' the User Agreement 'in drafting the Complaint . . . .'").) The UA sets the rules by which users transact on the Platforms and provides the basis for CBI to charge the very transaction fees that Plaintiffs seek to recover as damages in both the Complaint and the AC. (*Supra* 7-8.) Accordingly, the UA provides the terms that establish the nature of the parties' relationship. *See In re Trib. Co. Fraudulent Conv. Litig.*, 10 F.4th at 176 (affirming the district court's ability to consider documents setting forth the terms of the parties' relationship as integral); *see also Foreman*, 19 F.4th at 107-18 (noting the applicability of this exception to a variety of documents that may form the basis of a claim, including emails, contracts or documents filed with the SEC).[12] The UA was properly considered by the District Court because to ignore it would be to ignore the basis of the claims themselves and the relief sought.

---

[12] The outcome of *Foreman* is distinguishable given the nature of the documents at issue: a government report and work order that were not integral to a claim under

*(cont'd)*

**B.** **Because Plaintiffs Possessed and Knew About The User Agreement and Relied Upon It in Bringing Suit, the Court Properly Considered It**

The District Court was right to consider the UA because a court may consider documents at the motion to dismiss stage that were "'possessed by or known to the plaintiff and upon which it relied in bringing the suit.'" (SPA-14 (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)).) All three Plaintiffs expressly cited allegations referring to the UA as a basis for their joint motion to be appointed co-lead plaintiffs prior to filing the AC. (*Supra* 8.) And "[the UA] was put on the case record *by plaintiffs*, soon after they filed the Complaint, in seeking emergency relief." (SPA-15.) In so doing, Plaintiffs "asserted the primacy" of the UA. (*Id.*) Indeed, Plaintiffs argued (incorrectly) that a normal course update to this agreement was "directly aimed at undermining *this litigation*." (SA-62, 63.) When CBGI pointed out to the District Court that the sole counterparty to the UA was not even a party to the litigation, Plaintiffs represented that they would amend to name CBI as a defendant. (*Supra* 10-11.) Unquestionably, Plaintiffs both "'possessed'" the UA and "'relied [on it] in bringing the suit'"—and as such they "'cannot plead around it by refusing to make reference to it' in the AC." (SPA-15.)

---

the False Claims Act. Moreover, the Court clarified that "there [must be] no serious dispute as to the document's *authenticity*" and rejected consideration of certain government work orders because it was "unclear what th[ey] [we]re or whether all or one of th[em] reflect[ed] a true and correct copy." 19 F.4th at 107-09. Here, there is no dispute about the UA's authenticity.

Despite Plaintiffs' assertion that "'evidence produced on application for a preliminary injunction may not be considered' on a motion to dismiss" (Br. 40 (citing *Exchange National Bank of Chicago v. Touche Ross & Co.*, 544 F.2d 1126 (2d Cir. 1976)), the law does not impose a bright-line rule *against* considering an integral document on a motion to dismiss simply because it was also put on the record in connection with a TRO.[13] Such a rule would effectively allow parties to "hide" a document for motion to dismiss purposes despite having used the very same document to seek emergency relief. To the contrary, courts routinely take into account whether submitting a document in connection with a TRO shows that a plaintiff possessed or relied on the document, just like the District Court. *See First Lincoln Holdings, Inc. v. Equitable Life Assurance Soc'y*, 164 F. Supp. 2d 383, 386 n.3 (S.D.N.Y. 2001) ("Although [plaintiff] did not attach the [documents] to its complaint, these documents are integral to its breach of contract claim. [Plaintiff] did attach these documents to its preliminary injunction motion, so it cannot be said that plaintiff was without notice of the[m] . . . ."), *aff'd*, 43 F. App'x 462 (2d Cir. 2002) (relying on document considered below); *see also Telebrands Corp. v. Del Lab'ys, Inc.*, 719 F. Supp. 2d 283, 290 (S.D.N.Y. 2010) ("[W]e may properly

---

[13] *Touche Ross* simply states the general rule that ordinarily facts set forth in the complaint are assumed to be true. But this case is a well-settled exception to the general rule.

consider the parties' License Agreement in this case because, apparently unbeknownst to plaintiff's current counsel, the License Agreement became part of the Court's record when plaintiff's prior counsel submitted it as an exhibit to their motion for a TRO.").

Contrary to Plaintiffs' assertion, the District Court did not find that the mere introduction of the UA in seeking a TRO made it *automatically* admissible. Rather, as the District Court correctly observed, Plaintiffs' own decision to initiate those proceedings showed both that they possessed the document and that it is central to their claims—meeting the standard for whether the document can be considered. Moreover, Plaintiffs' (and *Amici*'s) attempt to justify excision of all reference to the UA on the grounds that, as part of seeking emergency relief, the "[p]arties reserve[d] all rights with respect to the [prior] versions of the [UA], including but not limited to the enforceability and applicability" (JA-735-36; Amici 29) is a red herring. Plaintiffs reserved their right to challenge any future attempt to compel arbitration pursuant to an earlier version of the UA but never suggested that the UA would no longer be central to the litigation. To the contrary, Plaintiffs represented that the nature of their claims, which referenced the UA, would not change and Defendants relied on that representation. (*Supra* 10-11.) Plaintiff cite no case law allowing them to walk away from such a representation, let alone requiring a court to ignore it.

32

**C.  Plaintiffs Cannot Erase or Directly Contradict Prior Allegations to Attempt to Avoid Dismissal**

Plaintiffs and *Amici* devote significant space to whether the District Court properly considered erased or directly contradictory allegations in the Complaint. (Br. 16-35; Amici 4-13.) Contrary to their assertions, the Order is consistent with a long line of decisions in this Circuit and others that stand for the common-sense principle that courts are not required to and need not turn a blind eye to evasive pleading tactics. Instead, courts may decide, in light of the specific circumstances, to consider prior allegations rather than artful pleading designed to evade dismissal. Without question, the "context-specific" task of determining whether a complaint states a claim requires a court to "draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

**1.  Plaintiffs Cannot Erase An Allegation in the Complaint That Incorporated the UA by Reference**

Plaintiffs argue that they can effectively "erase" the Complaint's prior reference to the UA by filing a superseding complaint (Br. 37), but the law does not permit such gamesmanship. To the contrary, as this Court and others have found, a plaintiff "cannot evade [consideration of an integral document] merely because [it] carefully omitted mention of [it]." *Chen v. Antel Commc'ns, LLC*, 653 F. App'x 43, 44 (2d Cir. 2016).

Indeed, in *Wright v. Green Tree Servicing LLC*, 2016 WL 4098404 (S.D.N.Y. July 25, 2016), *aff'd*, 685 F. App'x 67 (2d Cir. 2017) (summary order), the district court expressly considered a document attached to an earlier complaint when dismissing a subsequent complaint that failed to attach or refer to it. *Id.* at *1 n.1. This Court also deemed a document integral and considered it where an "amended complaint did not explicitly refer to" it but the "original complaint did." *James v. Bradley*, 808 F. App'x 1, 3 (2d Cir. 2020) (summary order); *see also James v. Gage*, 2019 WL 1429520, at *7 (S.D.N.Y. Mar. 29, 2019) (finding it appropriate to consider documents attached to an earlier complaint in deciding a motion to dismiss even though the documents were excluded from the latter operative complaint). Similarly, in *Poindexter v. EMI Record Group Inc.*, 2012 WL 1027639 (S.D.N.Y. Mar. 27, 2012), Judge Swain considered a document "attached to the original complaint (and omitted from the Amended Complaint)" while noting that "even though the Amended Complaint is the operative pleading, the Court may still credit admissions in the original complaint and attached exhibits." *Id.* at *1-2.[14]

---

[14] Plaintiffs are wrong (Br. 17, 25) that statements in superseded complaints cannot constitute judicial admissions. *See Andrews v. Metro N. Commuter R. Co.*, 882 F.2d 705, 707 (2d Cir. 1989) ("The amendment of a pleading does not make it any the less an admission of the party."); *see also Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528-29 (2d Cir. 1985) ("A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding. Accordingly, the district court properly disregarded
*(cont'd)*

34

This Court has also affirmed dismissal on the basis of allegations in superseded complaints where the amended complaint excised key allegations in an instance of artful pleading. *See, e.g.*, *In re Herald*, 730 F.3d 112, 118-19 & n.6 (2d Cir. 2013) (considering superseded complaint and discussing "Congress's purpose to negate the artful pleading by which certain plaintiffs evaded the dictates of the PSLRA," 15 U.S.C. §§ 77z-1, 78u-4). Indeed, even Plaintiffs' own case law acknowledges that there may be "rare occasion to disregard the contradictory *and manipulated* allegations of an amended pleading." *DuMont v. Litton Loan Serv., LP*, 2015 WL 1061138, at *8 (S.D.N.Y. Mar. 11, 2015) (Br. 25-26).

Contrary to Plaintiffs' and *Amici*'s sweeping assertion that other Circuits refuse to consider any allegations in an original complaint (Br. 18-22; Amici 10-14), many do when faced with similar attempts to plead around fatal prior allegations and incorporated documents. For example, the Seventh Circuit allowed consideration of a document incorporated by reference in an original complaint even after the amended complaint excised references to it and upheld a dismissal "based upon undisputed public information plaintiffs themselves brought before the district court." *Orgone Cap. III, LLC v. Daubenspeck*, 912 F.3d 1039, 1048 (7th Cir. 2019). There, the court acknowledged that "[a]n amended pleading does not operate as a

---

[plaintiff's] affidavits seeking to controvert its own pleading [at the motion to dismiss stage].").

judicial *tabula rasa*," and that "'[a]bsent a claim that there is a plausible, good-faith basis to challenge the legitimacy of [a prior complaint],' the court is entitled to take judicial notice of a complaint and its contents." *Id.* (third alteration in original) (quoting *Watkins v. United States*, 854 F.3d 947, 950 (7th Cir. 2017)). Indeed, appellants in *Orgone* made the same argument on appeal that Plaintiffs and *Amici* make—*i.e.*, that even if "prior pleadings c[an] be introduced at trial [they can]not [be] on a motion to dismiss." Reply Brief of Plaintiffs-Appellants in *Orgone Capital III*, 2018 WL 3846308, at *6. The Seventh Circuit rejected that argument.

Likewise, in *Dudek v. Prudential Securities, Inc.*, the Eighth Circuit considered a prior complaint's allegations in determining that the claims in the operative complaint were preempted. 295 F.3d 875, 879-80 (8th Cir. 2002). The court did so even though the new complaint "*deleted*" various allegations supporting preemption that "permeated their [original] complaint." *Id.* at 879.

Here, the Complaint unequivocally alleged that "Coinbase entered into contracts *via the Coinbase User Agreement*, with Plaintiffs and the members of the Class and Subclasses, *pursuant to which* Plaintiffs purchased Digital Asset Securities through Coinbase and paid Coinbase fees" (*Supra* 7.) When CBGI (then the only defendant) highlighted that it was not a counterparty to the UA, Plaintiffs *amended to name CBI*—the counterparty—as a defendant. (*Supra* 9-11.) Not only did Plaintiffs represent that the AC would not "change the general nature of the

claims asserted" (JA-734-35), but they also continue to pursue claims for rescission and seek recovery of transaction fees. Thus, Plaintiffs' claims necessarily remain dependent on the UA, regardless of their artful pleading and cagey omissions. (SPA-15 (citing *Van Houtven v. Adams*, 2014 WL 1338066, at *2 (S.D.N.Y. Apr. 3, 2014), *aff'd*, 605 F. App'x 37 (2d Cir. 2015)).)

### 2. District Courts Can Consider Directly Contradictory Factual Allegations

The same reasoning and result applies to Plaintiffs' directly contradictory factual allegations in the Complaint. These allegations, *i.e.*, that users transact with each other on the Platforms and not with "Coinbase," are also fatal to Plaintiffs' claims. (*Compare* JA-17 ¶27, JA-19 ¶32 *with* JA-795 ¶33, JA-1006 ¶936.) Although this Court can affirm the dismissal solely due to the integral nature of the UA, the District Court rightly considered the full procedural history when evaluating the AC's intentionally evasive and directly contradictory allegations.

Within this Circuit, "there is authority supporting the notion that a court may disregard amended pleadings when they directly contradict facts that have been alleged in prior pleadings." *Scarola Malone & Zubatov LLP v. Verizon Commc'ns, Inc.*, 2015 WL 3884211, at *5 (S.D.N.Y. June 24, 2015), *aff'd sub nom. Scarola Malone & Zubatov LLP v. McCarthy, Burgess & Wolff*, 638 F. App'x 100 (2d Cir.

2016) (summary order).[15] "Most courts that have disregarded allegations in an amended complaint in order to consider contradictory allegations in a previous pleading have done so in special circumstances." *Id.*[16] For example, "[w]here a 'plaintiff blatantly changes his statement of the facts in order to respond to the defendant['s] motion to dismiss . . . [and] directly contradicts the facts set forth in his original complaint,' a court is authorized 'to accept the facts described in the original complaint as true.'" *Colliton v. Cravath, Swaine & Moore LLP*, 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008) (considering prior allegations where an amended pleading was "a transparent attempt . . . to avoid a dispositive defense"), *aff'd*, 356 F. App'x 535 (2d Cir. 2009) (summary order).

As another example, in dismissing a complaint, a district court declined to credit as true allegations in an amended complaint that were "contradicted" by more

[15] "Although this Court's rulings by summary order do not have precedential effect, *see* 2d Cir. Local R. 32.1.1(a), 'denying summary orders precedential effect does not mean that the court considers itself free to rule differently in similar cases.'" *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 81 n.5 (2d Cir. 2018). Moreover, "summary orders . . . [have] to be deemed some indication of how the Court of Appeals might rule were it to decide the issue in a binding opinion." *Boykin v. United States*, 2020 WL 774293, at *7 (S.D.N.Y. Feb. 18, 2020) (alterations in original).

[16] Ultimately, the district court in *Scarola* concluded that "[s]pecial circumstances" warranted consideration of the plaintiffs' earlier complaint because the allegations "directly contradict[ed] those in [the] amended pleadings." 2015 WL 3884211, at *6. This Court affirmed the dismissal by summary order, stating that the Court had "reviewed [plaintiff's] remaining arguments and conclude[d] they [were] without merit." 638 F. App'x at 103.

specific statements in an earlier pleading. *Delaney v. Farley*, 2014 WL 5795562, at *4 (S.D.N.Y. Nov. 7, 2014), *aff'd*, 623 F. App'x 14 (2d Cir. 2015) (summary order). This Court affirmed by summary order, specifically referencing allegations from the earlier complaint. *See* 623 F. App'x at 16 ("*Consistent with allegations in his original complaint . . . .*").[17]

Contrary to Plaintiffs' and *Amici*'s characterization of the Order as an "outlier" (Br. 26; Amici 8-10), this long and consistent line of cases confirms that judges not only have but should use their discretion to consider directly contradictory allegations designed to evade dismissal:

- *Forrest v. N.Y.C. Hous. Auth.*, 2023 WL 3203646, at *6 (S.D.N.Y. May 2, 2023) ("It is true that an amended complaint generally may clarify, explain, or even omit allegations made in an original complaint . . . . But that is not this case, where, as the Court has found, allegations in the [amended complaint] run directly contrary to the original Complaint.").

- *Wheeler v. Slanovec*, 2019 WL 2994193, at *6 (S.D.N.Y. July 9, 2019) ("In cases 'where allegations in an amended pleading 'directly contradict' pleadings in the original complaint, courts have disregarded the amended pleading.' . . . The Court is therefore not obligated to credit Plaintiff's new and contradictory allegation . . . .").

---

[17] Similarly, the Supreme Court has held and this Court has reiterated that courts may look beyond "the face of the plaintiff's complaint" when dismissing on preemption or jurisdictional grounds "[i]f a court concludes that a plaintiff has 'artfully pleaded' claims." *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998); *accord Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154, 169-70 (2017) ("The inquiry . . . does not ride on whether a complaint includes (or, alternatively, omits) [ ] precise words" because "a 'magic words' approach" would be "too easy to bypass."); *see also, e.g., In re Herald*, 730 F.3d at 118-19 & n.6.

39

- *Romain v. Cap. One, N.A.*, 2013 WL 6407731, at *3 (E.D.N.Y. Dec. 9, 2013) ("Plaintiff alleged in his original Complaint that he received the right-to-sue letter on September 27, 2011 . . . . Such an assertion flatly contradicts his current allegation, and the Court, therefore, need not accept it.").

Plaintiffs and *Amici* offer no compelling reason to eliminate this judicial discretion in favor of an unyielding, bright-line prohibition. Plaintiffs even concede that amended allegations may be disregarded in certain circumstances. (Br. 25-26.) Defendants do not suggest that superseded pleadings should *always* be considered, only that they rightly are in cases like this.[18] Neither *Dluhos* nor any of Plaintiffs' or *Amici*'s other Second Circuit decisions (Br. 16-17; Amici 5-6) address a situation where, as here, a plaintiff directly contradicts its prior factual allegations in a transparent attempt to evade dismissal.

Even among the decisions Plaintiffs identify in this Circuit as having declined to consider prior allegations on a motion to dismiss (Br. 18), many of those courts expressly recognized that they *could* have done so in appropriate circumstances (*i.e.*,

---

[18] As the District Court recognized, "[o]rdinarily, an amended complaint 'supersedes the original, and renders it of no legal effect.'" (SPA-12 (citing *Dluhos v. Floating & Abandoned Vessel, Known as N.Y.*, 162 F.3d 63, 68 (2d Cir. 1998)).) *Amici* incorrectly assert that the word "ordinarily" is limited to timing issues that arise when an amended complaint has not yet been "properly served." (Amici 5 n.3.) But the case upon which they rely, *International Controls Corp. v. Vesco*, 556 F.2d 665 (2d Cir. 1977), did not address whether—much less hold that—the "ordinary" qualifier is limited to such considerations. *Id.* at 668-69. And this Court has more recently affirmed decisions considering prior complaints where warranted. (*Supra* 37-38).

where the earlier allegations directly contradicted the amended pleading). *E.g.*, *Streit v. Bushnell*, 424 F. Supp. 2d 633, 639 n.4 (S.D.N.Y. 2006) (distinguishing allegations at issue from cases where the amended allegations were "blatant" or "directly contradictory"); *Contant v. Bank of Am. Corp.*, 2018 WL 5292126, at *3 (S.D.N.Y. Oct. 25, 2018) (same); *Morris v. City of New York*, 2022 WL 2866450, at *1-3 (S.D.N.Y. July 21, 2022) (same); *Goldrich v. Masco Corp.*, 2023 WL 2649049, at *2-3 (S.D.N.Y. Mar. 27, 2023). The bright-line prohibition Plaintiffs seek is not the law, nor should it be.

Plaintiffs' sweeping contentions that affirming the Order would "*creat[e]* an *inter*-circuit split with the ten other circuit courts that have ruled on this issue" (Br. 25) and that "nearly every other circuit" has determined that prior pleadings may not be considered (Br. 18) are wrong. For example, although Plaintiffs acknowledge that "some district courts in the Ninth [Circuit] have suggested that superseded pleadings may be considered when they contradict the amended pleadings" (Br. 22), they fail to mention that the Ninth Circuit itself has done so as well. *See Rodriguez v. Sony Comput. Ent. Am., LLC*, 801 F.3d 1045, 1054 (9th Cir. 2015) ("[Plaintiff's] subsequent attempt to thwart the statutory language [through] artful[ ] pleading . . . is unconvincing, especially considering that the more recent pleading completely contradicts the earlier pleading."). *Amici* too ignore this subsequent Ninth Circuit case law. (Amici 12.)

41

And despite Plaintiffs' attempt to cast the Eighth Circuit as having a rule rendering prior complaints universally obsolete (Br. 21-22), the decision they cite acknowledges that there are exceptions. *See In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000) (holding original complaint was controlling). In addition, a subsequent Eighth Circuit decision expressly considered on a motion to dismiss "facts according to the allegations in the pleadings, including [plaintiff's] initial and amended complaints and the record created as a result of [plaintiff's] motion for temporary restraining order [and] preliminary injunction." *Miller v. Redwood Toxicology Lab'y, Inc.*, 688 F.3d 928, 931 (8th Cir. 2012).[19]

District court decisions across the country are in accord with the approach taken by courts within this Circuit. Plaintiffs and *Amici* do not dispute that district courts in the D.C. Circuit consider contradictory, superseded allegations. (Br. 22; Amici 13.) Plaintiffs and *Amici* fail to mention, however, that courts in other circuits have done so too. For example, a district court in the Eleventh Circuit held that "the rule governing amended pleadings superseding former pleadings is a 'general' one," and explained that "several decisions from courts in the Second Circuit . . . have held that courts '[i]n rare circumstances . . . will consider prior pleadings . . . when the

---

[19]  Nor do the Seventh and Eighth Circuits permit a plaintiff to simply erase prior allegations in an attempt to eliminate reference to integral documents or through artful pleading. (*Supra* 35-36.)

plaintiff directly contradicts the facts set forth in his original complaint." *Fernandez v. Sch. Bd. of Miami-Dade Cnty.*, 201 F. Supp. 3d 1353, 1361 n.1 (S.D. Fla. 2016) (considering allegations in earlier complaints in face of "inexplicabl[e]" removal from subsequent complaint). Tellingly, the court "found no Eleventh Circuit authority that would bar the invocation of this exception under these specific circumstances—where plaintiffs have manipulated the allegations in their pleadings to avoid a dispositive defense." *Id.*; *see also Ransom v. San Jacinto Junior Coll.*, 2014 WL 3843642, at *1 n.2 (S.D. Tex. Aug. 4, 2014).

Numerous out-of-circuit cases upon which Plaintiffs rely simply do not address whether a district court can consider contradictory pleadings in certain circumstances. Instead, those cases either repeat the uncontroversial rule that an amended complaint ordinarily supersedes the original or discuss other evidentiary or jurisdictional issues without having occasion to grapple with special circumstances like those here.[20]

---

[20] (*E.g.*, Br. 18-22 (citing *Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 503 n.6 (3d Cir. 2014); *Mink v. Suthers*, 482 F.3d 1244, 1254 (10th Cir. 2007); *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991); *Franklin v. Kan. Dep't of Corr.*, 160 F. App'x 730, 734 (10th Cir. 2005); *Spencer v. City of Cheyenne*, 1 F. App'x 863, 864-65 (10th Cir. 2001); *Fawzy v. Wauquiez Boats SNC*, 873 F.3d 451, 455 (4th Cir. 2017); *New Orleans Ass'n of Cemetery Tour Guides & Cos. v. New Orleans Archdiocesan Cemeteries*, 56 F.4th 1026, 1033 (5th Cir. 2023); *Calhoun v. Bergh*, 769 F.3d 409, 410 (6th Cir. 2014); *Shell v. Parrish*, 448 F.2d 528, 530 (6th Cir. 1971); *Nolen v. Lufkin Indus., Inc.*, 469 F. App'x 857, 860 (Fed. Cir. 2012)).)

Regardless of whether the allegation was "erased" or directly contradicted, the District Court was correct to conclude that special circumstances—particularly, Plaintiffs' choice to seek injunctive relief relating to the UA—required rejection of the Amended Complaint's "allegations as to privity and title" that were "strategically added to elude the facts pled in the Complaint and contained in the User Agreement." (SPA-16.) And all three Plaintiffs cited the specific allegations the District Court highlighted as directly contradictory to the AC in their joint motion seeking appointment as co-lead plaintiffs. (*Supra* 8.) Plaintiffs gloss over these critical parts of the record that demonstrate an obvious attempt to evade dismissal and support the District Court's consideration of their earlier allegations.

Plaintiffs' obvious gamesmanship stands in stark contrast to out-of-circuit cases on which Plaintiffs and *Amici* rely. For example, Plaintiffs rely heavily on *West Run Student Housing Associates, LLC v. Huntington National Bank*, 712 F.3d 165 (3d Cir. 2013) (Br. 17-18, 25). But those plaintiffs sought to correct numbers that had been alleged "in error"—not to blatantly contradict prior allegations to evade dismissal or erase reference to an integral document. *Id.* at 171. *West Run* is further distinguishable because Plaintiffs here represented that they would not change the general nature of their claims (*supra* 10-11), which is the opposite of identifying an error in need of correction as in *West Run*.

Finally, Plaintiffs try to spin their contradictory allegations as to title and privity as "go[ing] to a legal question" rather being factual allegations. (Br. 26.) But whether users transact with each other or CBI is a fact within Plaintiffs' knowledge and directly contradictory prior *factual* allegations can be considered. (*Supra* 37.) Thus, even if "privity or ownership" are ultimate legal conclusions, they inescapably flow from the "factual allegations that undermine the AC's thesis that Coinbase was a statutory seller." (SPA-13); *see New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*, 442 F.3d 101, 111 (2d Cir. 2006) (Br. 24) ("To the extent that the determination of ownership turns on the interpretation of provisions of a contract, the existence and *terms of the contract are questions of fact*, but the effect of those terms on ownership is strictly a question of law . . . ."). The Court's decisions in *In re Motors Liquidation Co.*, 957 F.3d 357 (2d Cir. 2020) (Br. 24), and *Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt International B.V. v. Schreiber*, 407 F.3d 34 (2d Cir. 2005) (Br. 24), are distinguishable for the same reason: Plaintiffs can be held to their prior contradictory *factual* allegations even where such facts lead to a legal conclusion.

**D.      Plaintiffs' Attempts to Evade the Consequences of the User Agreement Are Unavailing**

###       1.      The Court Need Not Decide Whether Plaintiffs Were Bound by Any Specific Version of the UA

Unable to escape the fatal consequences of considering the UA, Plaintiffs contend that even if the UA were considered, "it would be irrelevant because no [Plaintiff] is bound by it." (Br. 42.) Setting aside that this assertion appears nowhere in the AC, this argument is a red herring. Under black-letter law, a court may consider any documents that are integral to or relied upon in a complaint and to disregard any allegations that those materials contradict. (*Supra* §II.A.) As discussed above, the UA is integral to both the Complaint and the Amended Complaint. (*Supra* §II.A-C.) Because the UA "flatly contradict[s]" the AC's allegations regarding privity and title, the District Court was permitted to disregard those factual allegations. (SPA-16; *supra* 28.) Once those allegations were disregarded, the District Court correctly concluded that Plaintiffs failed to state a claim. (SPA-16-17.)

Plaintiffs' argument is also refuted by the Complaint, which "expressly references the User Agreement *as covering the class period*." (SPA-13-14 n.5.) All Plaintiffs transacted during the alleged class period beginning in October 2019 (*supra* 6) and, as District Court observed, predecessor versions in effect during that time "contain[ed] substantially similar relevant language" that directly contradicts

the AC's allegations. (SPA-14 n.5, citing JA-620 §2.6.1.)[21] Thus, the District Court was not required to parse which Plaintiff may be bound by which specific version of the UA in order to rightly disregard contrary allegations.[22]

### 2. The UA Does Not Purport to Waive Securities Claims

Plaintiffs' argument that the UA operates as an improper waiver in violation of 15 U.S.C. §§ 77n and 78cc(a) (Br. 46-47) was properly rejected by the District Court. The UA contains no such waiver, express or implied. The only case on which Plaintiffs rely, *McMahan & Co. v. Wherehouse Entertainment, Inc.*, 65 F.3d 1044 (2d Cir. 1995) (Br. 47), is readily distinguishable. It involved a no-action clause that imposed pre-suit procedural requirements that were found to strip certain classes of

---

[21] Plaintiffs argue, as they did below, that the December 2019 UA, which was in place when Rodriguez signed up, suggests that Defendants are direct sellers. (Br. 44.) But as Defendants explained below, that version too expressly states that title remains with users and does not transfer to any Coinbase entity. (JA-700 §2.6.1.) Regardless of when any Plaintiff signed up for the Platforms, their certifications indicate that they transacted no earlier than February 2019 and continued during the alleged class period. (JA-100 (Oberlander); JA-414 (Rodriguez); SA-25 (Underwood).)

[22] The District Court's consideration of the UA is consistent with other recent cases considering cryptocurrency trading platforms' user agreements to evaluate title issues generally. *See, e.g.*, *In re Celsius Network LLC*, 647 B.R. 631, 658 (Bankr. S.D.N.Y. 2023) (relying on Terms of Use to assess "title and ownership of assets" and finding that, based on the specific Terms of Use in that case, customers did not retain title), *leave to appeal denied*, 2023 WL 2648169 (S.D.N.Y. Mar. 27, 2023); *In re Voyager Dig. Holdings, Inc.*, 2022 WL 3146796, at *3 (Bankr. S.D.N.Y. Aug. 5, 2022) (considering customer agreement and concluding that customers retained title to funds held in certain accounts).

47

plaintiffs from exercising their substantive rights under the securities laws. *Id.* at 1051. The UA does no such thing; rather, it reveals that Plaintiffs' asserted claims have no merit. *See Harsco Corp. v. Segui*, 91 F.3d 337, 343-44 (2d Cir. 1996) (plaintiff "ha[d] not waived its rights [under the securities laws] to bring any suit" and even though "the [contract] 'weakens' [plaintiff's] ability to recover under the [Exchange] Act . . . such a 'weakening' does not constitute a forbidden waiver"); *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 390 (5th Cir. 2010) (even "clauses [that] change the nature of [a] representation" do not operate as an improper waiver). Plaintiffs retain the right to bring claims under the securities laws but *these particular claims* were dismissed on the merits because they depend on allegations that the parties' contract "flatly contradict." (SPA-15.)

## E.  Plaintiffs' And *Amici*'s Arguments Regarding the PSLRA Are Unavailing

Plaintiffs and *Amici* assert that by considering prior allegations the Order "runs contrary to the text and purpose of the PSLRA" and undermines the lead plaintiff selection process. (Br. 26-30; *see also* Amici 23-25.) This argument not only disregards the PSLRA's actual goals, but also ignores Plaintiffs' conduct.

Congress enacted the PSLRA to curtail "perceived abuses of the class-action vehicle" and in response to "nuisance filings, targeting of deep-pocket defendants, vexatious discovery requests, and 'manipulation by class action lawyers of the clients whom they purportedly represent.'" *Merrill Lynch, Pierce, Fenner & Smith*

*Inc. v. Dabit*, 547 U.S. 71, 81 (2006). Plaintiffs and *Amici* ignore these express goals and that a primary purpose of the PSLRA is "to deter or at least quickly dispose of those suits whose nuisance value outweighs their merits." *Id.* at 82.[23] Indeed, the PSLRA strengthened the district court's gatekeeping function by, *inter alia*, "including more stringent pleading requirements." *Romano v. Kazacos*, 609 F.3d 512, 517 (2d Cir. 2010). Likewise, the PSLRA mandates that "all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss." 15 U.S.C. § 77z-1(b)(1); *see also In re Vivendi Universal, S.A. Sec. Litig.*, 381 F. Supp. 2d 129, 129 (S.D.N.Y. 2003) ("Congress enacted the mandatory stay of discovery, in part, to prevent plaintiffs from filing such frivolous lawsuits . . . .").

Plaintiffs and *Amici* argue that the Order will lead to a "race to the courthouse" and "more contested motion practice over lead plaintiff appointment" by supposedly requiring prospective lead plaintiffs to file their own complaint if they disagree with any allegations in the first filed complaint. (Br. 28; Amici 24-25.) But there is no

---

[23]  *See also Bielski*, 143 S. Ct. at 1921 ("Th[e] potential for coercion is especially pronounced in class actions, where the possibility of colossal liability can lead to what Judge Friendly called 'blackmail settlements.'"); *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 741 (1975) (noting that potentially abusive discovery is a particular risk in securities litigation and that "to the extent that it permits a plaintiff with a largely groundless claim to simply take up the time of a number of other people, with the right to do so representing an in terrorem increment of the settlement value, rather than a reasonably founded hope that the process will reveal relevant evidence, it is a social cost rather than a benefit").

requirement that an individual even file a complaint to be appointed lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) ("[T]he court shall consider any [lead plaintiff] motion made by a purported class member . . . including any motion by a class member who is not individually named as a plaintiff in the complaint or complaints . . . . "); 15 U.S.C. § 77z-1(a)(3)(B)(i) (same); *Buhrke Fam. Revocable Tr. v. U.S. Bancorp*, 2023 WL 1879525, at *2 (S.D.N.Y. Feb. 10, 2023) ("The PSLRA creates a rebuttable presumption that 'the most adequate plaintiff' is the person or group that . . . has either filed the complaint or made a motion [to be appointed lead plaintiff] . . . ." (second alteration in original)). Plaintiffs and *Amici* also ignore steps that all Plaintiffs (including Rodriguez) took to repeatedly and affirmatively embrace the allegations of the Complaint in seeking to be appointed co-lead plaintiffs (*supra* 8)—none of which future prospective lead plaintiffs must replicate nor the PSLRA requires.

Claiming consideration of the Complaint is "especially improper" for Rodriguez (Br. 30-35; Amici 23-25) fares no better. Rodriguez voluntarily engaged in all the aforementioned conduct relying upon the Complaint's allegations and individually affirmed that the Complaint was "the product of substantial investigation" and "counsel invested substantial time" in filing it. (*Supra* 8.) Rodriguez further swore that he "reviewed the Complaint" and "authorize[d] the filing of a *comparable* complaint on [his] behalf." (*Supra* 8.) Hardly an "absent class

member" (Br. 32), Rodriguez had been appointed co-lead plaintiff when Plaintiffs moved for emergency relief and it was Rodriguez's counsel who represented that the AC's allegations would not materially differ from those in the Complaint. (*Supra* 10.) If Rodriguez had qualms about the Complaint or any of its underlying allegations, he had ample opportunity to disclaim it; instead, he unequivocally endorsed it.

Thus, the District Court correctly concluded that Rodriguez's interests were adequately represented. (SPA-14 n.5.) Plaintiffs' attempt to frame Rodriguez as a stranger to the Complaint who should not be "[p]unish[ed] . . . for a different set of plaintiffs' allegations" (Br. 31) ignores what occurred below.[24]

## F.    Plaintiffs' New Rule 15 Argument Is Incorrect

Plaintiffs' argument that Federal Rule of Civil Procedure 15 authorized their contradictory pleading (Br. 17) was not raised below and should not be considered. *See Torcivia v. Suffolk Cnty.*, 17 F.4th 342, 367 (2d Cir. 2021) ("The law in this Circuit is clear that where a party . . . advances arguments available but not pressed

---

[24] Plaintiffs and *Amici* criticize the District Court's citation to *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999), and contend that the District Court "made no effort to support its conclusory statement that Rodriguez's interest[s] were adequately represented." (Br. 33; Amici 23.) That the District Court did not list each of Rodriguez's personal endorsements of the Complaint does not make them any less binding, nor does it suggest that the District Court looked past the numerous representations Rodriguez and his counsel made.

below, waiver will bar raising the issue on appeal." (alteration in original)), *cert. denied*, 143 S. Ct. 438 (2022).

Regardless, this argument is at odds with Plaintiffs' conduct. Despite their recitation of the procedural history relating to their request for emergency relief (Br. 8-10), Plaintiffs ignore that, to resolve that dispute, they specifically represented to the District Court that their amendment would not change the general nature of their claims. (*Supra* 10-11.)[25] This Court has affirmed dismissal where a plaintiff went beyond the permitted scope of amendment because holding the plaintiff "accountable for its previous representations to the court and considering [the] prior complaint in deciding defendants' motion to dismiss" was properly within the district court's discretion. *Palm Beach Strategic Income, LP v. Salzman*, 457 F. App'x 40, 44 (2d Cir. 2012) (summary order).[26]

---

[25] Plaintiffs ignore that the District Court granted them the opportunity to amend upon receipt of Defendants' motion to dismiss. (JA-437 n.1.) Plaintiffs eschewed that opportunity; instead, Plaintiffs opposed the motion, making the dismissal of their federal claims with prejudice all the more appropriate.

[26] Leave to amend may be denied where a plaintiff attempts to "erase" prior admissions. *Austin v. Ford Models, Inc.*, 149 F.3d 148, 155 (2d Cir. 1998), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002); *see also Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167-68 (2d Cir. 2003) (allegations in a complaint "are 'judicial admission[s]' by which [the plaintiff] was 'bound throughout the course of the proceeding'" and affirming denial of leave to amend). A case upon which *Amici* rely underscores this point. *See Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 260 (2d Cir. 2002) (Amici 2, 5) (holding that
*(cont'd)*

**G.    The Other Proposed "Tools" Are Insufficient to Deter the Type of Gamesmanship Present Here**

None of the alternative tools that *Amici* proffer compel reversal of the Order because each suffers from significant flaws. For example, *Amici* argue that a district court "may properly consider admissible contradictory allegations as part of the evidentiary record, but not at the 12(b)(6) stage." (Amici 14-16.) But waiting to address allegations designed to evade dismissal subjects defendants to precisely the "abuses" of "nuisance filings" that Congress sought to avoid in putative securities class actions and subverts the PSLRA's goal of "quickly dispos[ing] of those suits whose nuisance value outweighs their merits." *Dabit*, 547 U.S. at 81-82. Holding otherwise would also be inconsistent with Rule 1's requirement "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

*Amici* also assert that sanctions pursuant to Federal Rule of Civil Procedure 11 can deter gamesmanship. (Amici 18-20.) As a threshold matter, sanctions should not be a routine tool. In any event, this case illustrates the inadequacy of that threat, as it plainly did not deter gamesmanship here. Moreover, there is no reason why a court, or defendants, should have to wait until the end of a case—after devoting

---

plaintiff's "attempt to amend his complaint was futile" because his "eleventh-hour attempt to change his theory of recovery" directly contradicted the position he "had consistently litigated [in] th[e] action").

53

substantial time and resources—to see if sanctions will be available for claims that were meritless from the outset. The PSLRA, in addition to imposing a gatekeeping requirement to dismiss frivolous litigation at the outset, already requires that "upon final adjudication of the action [including on a motion to dismiss], the court shall include in the record specific findings regarding compliance by each party and each attorney representing any party with each requirement of Rule 11(b)." 15 U.S.C. § 77z-1(c)(1); *see also Dabit*, 547 U.S. at 81.

*Amici* further suggest that a district court "may deny leave to amend under Rule 15 for proposed amendments not filed as of right." (Amici 17-18.) But Plaintiffs represented that the general nature of their claims would not change and had the opportunity to amend (again) but declined to do so. (*Supra* 10-11 & n.25.) When confronted with this sort of gamesmanship, the district court, as a gatekeeper, should be—and is—empowered to address it on a motion to dismiss.

## III. PLAINTIFFS FAIL TO STATE ANY CONTROL PERSON CLAIMS (JA-1008-10; JA-1020-22)

Plaintiffs do not contest on appeal that their federal control person liability claims rise and fall with their alleged primary violations. *See Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 356 (2d Cir. 2022) ("To state a claim under Sections 20(a) and 20A of the Exchange Act, a plaintiff must allege a primary violation . . . ."); *In re ProShares Tr. Sec. Litig.*, 728 F.3d 96, 109 (2d Cir. 2013) (Securities Act). This Court should affirm their dismissal.

## IV. PLAINTIFFS FAIL TO ADEQUATELY ALLEGE ANY STATE LAW CLAIMS (JA-1022-40)

Defendants do not contest that the District Court had jurisdiction over the state law claims but respectfully submit that this Court may affirm dismissal on the grounds raised below—these state law claims that correspond to the federal claims alleged under the Securities Act and Exchange Act are no broader than the federal claims and therefore fail for the same reasons—or remand for consideration by the District Court.[27]

Plaintiffs *concede* that their state law statutory seller and control person claims are no broader than their federal counterparts. (Br. 58 (admitting "the applicable state laws are generally interpreted in line with their federal analogs" and only "*certain* of the state law claims" are broader).) Thus, those claims—by Plaintiffs' admission—should be dismissed along with their corresponding federal claims.

Plaintiffs' Exchange Act equivalent claims also fail. Without authority, Plaintiffs argue that none of these statutes "requires that a 'contract' exists—all that need exist is a 'purchase' or 'sale' of a security." (Br. 58.) But the text of each statute limits liability *only* to those who offered or sold the purported security. *See* Cal.

---

[27] Although this Court "generally refrain[s] from considering issues not decided by the district court . . . [it] ha[s] 'broad discretion' to consider issues 'raised, briefed, and argued [below].'" *Sulzer Mixpac AG v. A&N Trading Co.*, 988 F.3d 174, 184 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 1359 (2022).

Corp. Code § 25501.5(a)(1) ("A person who *purchases* a security *from* or sells a security to a[n unregistered] broker-dealer . . . may bring an action . . . ."); Fla. Stat. Ann. § 517.12(1) ("No dealer . . . *shall sell or offer* for sale any securities . . . unless the person has been registered . . . ."); N.J. Stat. Ann. § 49:3-71(c) ("Any person who *offered*, *sold* or purchased a security or engaged in the business of giving investment advice to a person in violation of [§ 49:3-56 (prohibiting acting as an unregistered broker-dealer)] is liable to that person . . . ."); (SDNY-ECF 59 at 28-29; SDNY-ECF 67 at 13). Thus, as Plaintiffs cannot refute, like Section 29(b), each relevant state statute requires contractual privity. *See Jackson v. Fischer*, 2015 WL 1143582, at *22 (N.D. Cal. Mar. 13, 2015) ("[California] Section 25501.5 expressly requires privity of contract as a condition to liability . . . ."); *Trilogy Props. LLC v. SB Hotel Assocs. LLC*, 2010 WL 7411912, at *12 (S.D. Fla. Dec. 23, 2010) ("[F]or a buyer to have a claim under Florida Statutes § 517.211, buyer/seller privity must exist."); *Lord Abbett Mun. Income Fund, Inc. v. Asami*, 2014 WL 3417941, at *14 (N.D. Cal. July 11, 2014) (New Jersey Section "49:3-71(a) requires privity in order to establish liability"), *aff'd*, 653 F. App'x 553 (9th Cir. 2016); (SDNY-ECF 59 at 28-29; SDNY-ECF 67 at 13). Section 29(b) shares that requirement. *Frati v. Saltzstein*, 2011 WL 1002417, at *5 (S.D.N.Y. Mar. 14, 2011) (a Section 29(b) plaintiff must show that they are "in contractual privity with the defendant[s]" (alteration in original)). Pursuant to the terms of the UA, users transact with each other and not

56

with Defendants. Therefore, no privity exists and dismissal of the state law claims should be affirmed.

## **CONCLUSION**

For the reasons discussed herein, the order and judgment dismissing the Amended Complaint should be affirmed.

Dated: August 23, 2023
     New York, New York       /s/ *Jay B. Kasner*

                                     Jay B. Kasner
                                     Lara A. Flath
                                     Alexander C. Drylewski
                                     Abigail E. Davis
                                     SKADDEN, ARPS, SLATE,
                                         MEAGHER & FLOM LLP
                                     One Manhattan West
                                     New York, New York  10001-8602
                                     Phone:  (212) 735-3000
                                     Fax:    (212) 735-2000
                                     jay.kasner@skadden.com
                                     lara.flath@skadden.com
                                     alexander.drylewski@skadden.com
                                     abigail.sheehan@skadden.com

                                   *Attorneys for Defendants-Appellees*

## <u>CERTIFICATE OF COMPLIANCE</u>

1. This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B), as modified by L.R. 32.1(a)(4)(A), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 13,996 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated: August 23, 2023

            /s/ *Lara A. Flath*     
            Lara A. Flath

            *Attorney for Defendants-Appellees*