# 23-0184-cv

## United States Court of Appeals

*for the*

## Second Circuit

———————————◆———————————

LOUIS OBERLANDER, on behalf of himself and all others similarly situated, CHRISTOPHER UNDERWOOD, on behalf of himself and all others similarly situated, HENRY RODRIGUEZ,

*Plaintiffs-Appellants,*

ZENEYDA PATIN, on behalf of themselves and all others similarly situated,

*Plaintiff,*

— v. —

COINBASE GLOBAL INC., COINBASE, INC., BRIAN ARMSTRONG,

*Defendants-Appellees.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR PLAINTIFFS-APPELLANTS

JORDAN A. GOLDSTEIN
SELENDY GAY ELSBERG PLLC
1290 Avenue of the Americas,
   17th Floor
New York, New York 10104
(212) 390-9000

STEVEN L. BLOCH
SILVER GOLUB & TEITELL LLP
One Landmark Square, 15th Floor
Stamford, Connecticut 06901
(203) 325-4491

*Attorneys for Plaintiffs-Appellants*

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...............................................................1

ARGUMENT ........................................................................................3

I.  Appellants Properly Plead Primary And Control-Person Claims Under The Securities Act.............................................................................3

    A.  The Amended Complaint Properly Alleges Securities Act Violations ................................................................................3

    B.  Alleged Contradictions Between The Amended Complaint Filed By All Three Plaintiffs And The Prior Complaint That Only Two Of Them Filed Do Not Support Dismissal .......................5

        1.  Appellants Appropriately Amended The Initial Complaint...................................................................5

        2.  The Amended Complaint Is Consistent With Appellants' Prior Representations To The District Court .............................9

        3.  Allegations In The Superseded Initial Complaint Are Not Judicial Admissions ...............................................13

        4.  The PSLRA Requires Giving Effect To Amended Pleadings ................................................................20

        5.  Rodriguez Never Consented To Be Bound By All Allegations In The Initial Complaint .........................................21

    C.  The Coinbase User Agreement Does Not Support Dismissal ...........22

        1.  No User Agreement Was Before the District Court .................22

        2.  The District Court Erred In Granting Conclusive Weight To Coinbase's Self-Serving And Unilateral Disclaimer Of Ownership In A Later Version Of The User Agreement ..............................................................24

II.  Appellants Properly Plead Primary And Control-Person Claims Under The Exchange Act..........................................................................26

i

III.   Appellants Properly Plead Claims Under State Securities Laws ..................28

CONCLUSION .......................................................................................................30

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*188 LLC v. Trinity Industries, Inc.*,
   300 F.3d 730 (7th Cir. 2002) ...............................................................16

*Amalgamated Sugar Co. v. NL Indus., Inc.*,
   825 F.2d 634 (2d Cir. 1987) ................................................................7

*Anderson v. Binance*,
   2022 WL 976824 (S.D.N.Y. Mar. 31, 2022), *appeal filed*, No. 22-
   972 (2d Cir. May 2, 2022) ...................................................................4

*In re Atlas Van Lines, Inc.*,
   209 F.3d 1064 (8th Cir. 2000) .............................................................17

*Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*,
   757 F.2d 523 (2d Cir. 1985) ...............................................................13

*Broder v. Cablevision Sys. Corp.*,
   418 F.3d 187 (2d Cir. 2005) ...............................................................23

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002) ...............................................................23

*Chen v. Antel Communications, LLC*,
   653 F. App'x 43 (2d Cir. 2016) ..........................................................15

*Citizens for Amending Proposition L v. City of Pomona*,
   239 Cal. Rptr. 3d 750 (Cal. Ct. App. 2018)........................................28

*Colliton v. Cravath, Swaine & Moore LLP*,
   2008 WL 4386764 (S.D.N.Y. Sept. 24, 2008), *aff'd*, 356 F. App'x
   535 (2d Cir. 2009).............................................................................15

*Delaney v. Farley*,
   2014 WL 5795562 (S.D.N.Y. Nov. 7, 2014)......................................18

*Delaney v. Farley*,
   623 F. App'x 14 (2d Cir. 2015).........................................................16

*Dudek v. Prudential Sec., Inc.*,
  295 F.3d 875 (8th Cir. 2002) ...............................................................17

*First Lincoln Holdings, Inc. v. Equitable Life Assurance Society*,
  164 F. Supp. 2d 383 (S.D.N.Y. 2001) ...............................................22

*U.S. ex rel. Foreman v. AECOM*,
  19 F.4th 85 (2d Cir. 2021) ...................................................................24

*Forrest v. N.Y.C. Hous. Auth.*,
  2023 WL 3203646 (S.D.N.Y. May 2, 2023) .....................................18

*Garrett v. Tandy Corp.*,
  295 F.3d 94 (1st Cir. 2002)..................................................................27

*Griffin v. PaineWebber, Inc.*,
  2001 WL 740764 (S.D.N.Y. June 29, 2001) .......................................5

*In re Herald*,
  730 F.3d 112 (2d Cir. 2013) .........................................................12, 15

*Holsworth v. BProtocol Foundation*,
  2021 WL 706549 (S.D.N.Y. Feb. 22, 2021) ........................................5

*Int'l Audiotext Network, Inc. v. AT&T Co.*,
  62 F.3d 69 (2d Cir. 1995) ....................................................................23

*James v. Bradley*,
  808 F. App'x 1 (2d Cir. 2020)..............................................................16

*James v. Gage*,
  2019 WL 1429520 (S.D.N.Y. Mar. 29, 2019)....................................19

*Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter, Inc.*,
  32 F.2d 195 (2d Cir. 1929) ..................................................................13

*Laza v. Reish*,
  84 F.3d 578 (2d Cir. 1996) ..................................................................15

*Lowinger v. Morgan Stanley & Co. LLC*,
  841 F.3d 122 (2d Cir. 2016) ..................................................................4

iv

*Maloney v. Scottsdale Ins. Co.*,
   256 F. App'x 29 (9th Cir. 2007) ........................................................17

*McMahan & Co. v. Wherehouse Entertainment, Inc.*,
   65 F.3d 1044 (2d Cir. 1995) ...........................................................26

*Miller v. Redwood Toxicology Lab'y, Inc.*,
   688 F.3d 928 (8th Cir. 2012) ...........................................................17

*In re Motors Liquidation Co.*,
   957 F.3d 357 (2d Cir. 2020) ...........................................................13

*Normerica Int'l Corp. v. LitterPurrfect, L.P.*,
   2018 WL 4489624 (S.D. Cal. Sept. 19, 2018).....................................28

*Orgone Cap. III, LLC v. Daubenspeck*,
   912 F.3d 1039 (7th Cir. 2019) ....................................................16, 17

*Palm Beach Strategic Income, LP v. Salzman*,
   457 F. App'x 40 (2d Cir. 2012).......................................................12

*Pinter v. Dahl*,
   486 U.S. 622 (1988)..............................................................3, 4, 6

*Poindexter v. EMI Record Grp. Inc.*,
   2012 WL 1027639 (S.D.N.Y. Mar. 27, 2012).....................................19

*In re PXRE Grp., Ltd., Sec. Litig.*,
   600 F. Supp. 2d 510 (S.D.N.Y. 2009), *aff'd*, 357 F. App'x 393 (2d
   Cir. 2009) ..............................................................................14

*Rodriguez v. Sony Computer Entertainment America, LLC*,
   801 F.3d 1045 (9th Cir. 2015) ....................................................17, 18

*Romain v. Cap. One, N.A.*,
   2013 WL 6407731 (E.D.N.Y. Dec. 9, 2013).......................................18

*Scarola Malone & Zubatov LLP v. McCarthy, Burgess & Wolff*,
   638 F. App'x 100 (2d Cir. 2016)...................................................14, 15

*Scarola Malone & Zubatov LLP v. Verizon Commc'ns, Inc.*,
   2015 WL 3884211 (S.D.N.Y. June 24, 2015).....................................18

v

*Telebrands Corp. v. Del Laboratories, Inc.*,
719 F. Supp. 2d 283 (S.D.N.Y. 2010) ..................................................23

*Torcivia v. Suffolk County*,
17 F.4th 342 (2d Cir. 2021) .................................................................12

*West Run Student Housing Assocs., LLC v. Huntington Nat'l Bank*,
712 F.3d 165 (3d Cir. 2013) ................................................................13

*Wheeler v. Slanovec*,
2019 WL 2994193 (S.D.N.Y. July 9, 2019).......................................18

*Wilson v. Sainting Exploration & Drilling Corp.*,
872 F.2d 1124 (2d Cir. 1989) ...........................................................4, 5

*Wright v. Green Tree Servicing LLC*,
2016 WL 4098404 (S.D.N.Y. July 25, 2016).....................................14

*Wright v. Green Tree Servicing LLC*,
685 F. App'x 67 (2d Cir. 2017) ..........................................................14

**Statutes**

15 U.S.C. § 77z-1(a)(3)(B)(i) .................................................................20

15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(bb) ....................................................20

15 U.S.C. § 78u-4(a)(3)(B)(i) .................................................................20

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) ....................................................20

**Rules**

Fed. R. Civ. P. 1 .....................................................................................19

Fed. R. Civ. P. 12(b)(6).........................................................................18

Fed. R. Civ. P. 15 .............................................................................14, 21

**Other Authorities**

Appellant's Br., *Scarola Malone & Zubatov LLP v. McCarthy, Burgess & Wolff,* 2015 WL 5450942 (2d Cir. Sept. 14, 2015) ..........................15

Appellant's Reply Br., *Scarola Malone & Zubatov LLP v. McCarthy, Burgess & Wolff,* 2015 WL 6693790 (2d Cir. Oct. 30, 2015)............................15

23 Williston on Contracts § 62:22 (4th ed.).............................................................27

## PRELIMINARY STATEMENT

Appellees' Opposition is notable for what it does not dispute: Appellants' Amended Complaint ("AC"), on its face, adequately pleads violations of Section 12(a)(1) of the Securities Act of 1933 ("Securities Act"). As the district court recognized below, and Appellees do not refute, the AC's allegations "would ordinarily assist [Appellants] in pleading" that Appellee Coinbase Inc. ("Coinbase") directly sold and passed title to unregistered securities, which incurred direct-seller liability under Section 12(a)(1) and analogous state statutes. The district court's dismissal of these claims rests entirely on the improper dispositive weight it gave to superseded prior allegations and to a purported contract that the AC does not cite or rely upon.

Appellees fail to show any reason to deviate from the well-established rule that, on a motion to dismiss, an amended complaint must be evaluated on its own terms and prior complaints have no effect. While Appellees argue vaguely that this case presents "special circumstances" that justify binding all three Appellants to the initial complaint that only two of them filed, the opposite is true: the AC was filed in the ordinary course after the appointment of lead plaintiffs under the Private Securities Litigation Reform Act of 1995 ("PSLRA") to update, clarify, and expand on the initial complaint's allegations, consistent with routine practice and Federal Rule of Civil Procedure 15.

Nor is this an appropriate case for dismissal based on extraneous documents. The district court relied on Coinbase's adhesive user agreement, but doing so was improper on a motion to dismiss because the AC does not reference or rely on the user agreement, and there has been no opportunity for discovery into factual questions about the applicability and effect of that contract, as well as its undisputed contradictions with earlier iterations of the user agreement purportedly foisted on Appellants (which earlier versions, in any event, support Appellants' claims that Appellee Coinbase Inc. directly sold and passed title of unregistered securities to Appellants). Even if considering the user agreement were proper (it was not), Appellees cannot credibly defend the district court's decision to give conclusive weight to self-serving statements that Coinbase recently added to the agreement in an effort to absolve itself of liability. Appellants' primary and control-person claims for direct-seller liability must be reinstated.

Appellants' other claims were also erroneously dismissed. Regarding Appellants' claims under Section 29(b) of the Securities Exchange Act of 1934 ("Exchange Act"), Appellees repeat the district court's error of assuming that Appellees seek rescission of the user agreement—a contract not referenced in the AC that the district court should not have considered on the pleadings. Rather, Appellees seek rescission of the separate unlawful contracts for purchase and sale of

2

the unregistered securities at issue in this litigation (the "Tokens"), which are distinct contracts from the user agreement.

Finally, Appellees concede that the district court erroneously ignored its independent jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") over the state law claims, even though this basis for jurisdiction was properly pleaded in the AC. The state law claims are well-pleaded for the same reasons as the federal claims. Moreover, the state law analogues to Section 29(b) should survive even if the corresponding federal claims fail because—as Appellees tacitly admit— the state statutes are materially broader, and void illegal purchases and sales, even in the absence of a separate contract.

## **ARGUMENT**

### I. **Appellants Properly Plead Primary And Control-Person Claims Under The Securities Act**

#### A. **The Amended Complaint Properly Alleges Securities Act Violations**

The AC stated claims for primary violations of Section 12(a)(1) and control-person claims, based on both the "direct seller" and "solicitation" prongs of *Pinter v. Dahl*, 486 U.S. 622 (1988). The Court should reverse the dismissal of these claims.

The district court acknowledged, and Appellees do not dispute, that the AC on its face adequately alleges that Coinbase "passed title" to the Tokens, as required for liability under the direct-seller prong of *Pinter*, 486 U.S. at 642. *See* Br. 48–49; SPA-12. Specifically, as alleged in the AC, Tokens can only be transferred between

3

Coinbase's centralized digital "wallet" and the external wallet of an individual user. JA-795 ¶ 33. Users who have transferred assets to Coinbase can "trade" them for other assets held centrally by Coinbase, but these "trades" result only in an updated notation in Coinbase's records, not a transfer of Tokens between users. *Id.* In each of these transactions, Appellee Coinbase is in direct privity with the individual user, but no two users are in privity, and title to digital assets passes only between Coinbase and an individual trader, but never between one user and another. *Id.*[1]

Separately, the AC adequately alleged that Coinbase "successfully solicit[ed] the purchase" of Tokens, *Pinter*, 486 U.S. at 647, by displaying prices, descriptions, and value propositions for Tokens, and promoting their sale. *See* Br. 50–51; JA-796 ¶ 35. Displaying prices is the *sine qua non* of solicitation, as "investors seek[] to buy low and sell high." *Lowinger v. Morgan Stanley & Co. LLC*, 841 F.3d 122, 131 (2d Cir. 2016). Unlike the mere "mailing [of] a copy of the private placement memorandum" in *Wilson v. Sainting Exploration & Drilling Corp.*, 872 F.2d 1124,

---

[1] Appellees note, but tellingly do not defend, the district court's citation to *Anderson v. Binance*, 2022 WL 976824 (S.D.N.Y. Mar. 31, 2022), *appeal filed*, No. 22-972 (2d Cir. May 2, 2022), in dismissing Appellants' direct-seller claims. Opp. 18 n.6. The detailed allegations of direct-seller status here go far beyond the allegations that the district court in *Anderson* determined insufficient to allege direct-seller liability. *Compare* Second Amended Complaint, *Anderson v. Binance*, 1:20-cv-2803-ALC, ECF No. 55 ¶ 58 (cited at *Anderson*, 2022 WL 976824, at *3 n.2), *with* AC, JA-794–95 ¶¶ 29–34 (detailing the centralized aspects of the Coinbase exchanges). The dismissal of claims in *Anderson* based on a materially different complaint from Appellants does not support dismissal of their claims.

4

1126 (2d Cir. 1989) (cited at Opp. 20), the displaying of prices is fundamental to driving sales and is not a mere "ministerial act," *id.*

Appellees' causation argument, Opp. 22–23, fails for the same reason: the price of a trade is its proximate cause, given that the purpose of a securities investment is to make money. Appellees' cited cases are inapposite. *Griffin v. PaineWebber, Inc.* dismissed a solicitation claim against a defendant that was not "involved in the actual solicitation of [plaintiff's] purchase," 2001 WL 740764, at *2 (S.D.N.Y. June 29, 2001), and *Holsworth v. BProtocol Foundation* dismissed a complaint for lack of personal jurisdiction, 2021 WL 706549, at *2 (S.D.N.Y. Feb. 22, 2021). Here, jurisdiction is undisputed, and Appellants have alleged that Coinbase both directly sold them Tokens and solicited their purchases for its own financial benefit. *E.g.*, JA-1006–07 ¶¶ 936–37.

Appellants' control-person claims under Section 15 are also adequately pleaded. Appellees concede that these claims "rise and fall with the[] alleged primary violations." Opp. 54.

### B. Alleged Contradictions Between The Amended Complaint Filed By All Three Plaintiffs And The Prior Complaint That Only Two Of Them Filed Do Not Support Dismissal

#### 1. Appellants Appropriately Amended The Initial Complaint

Appellees and their *amicus*, the U.S. Chamber of Commerce ("Chamber"), principally argue that the AC was an exercise in "gamesmanship," *e.g.*, Opp. 3;

5

Chamber Br. 2, and should thus be ignored. This argument is baseless, and it was error for the district court to accept it. The AC—filed by Rodriguez (the presumptive lead plaintiff under the PSLRA because he had the largest losses, *see infra* Section I.B.4) as well as Oberlander and Underwood—appropriately clarified and added to the claims and allegations initially asserted solely by Oberlander and Underwood.

The initial complaint asserted only claims under Section 29(b) of the Exchange Act and state law analogues. Because the new claim in the AC for direct-seller liability under Section 12(a)(1) required proof that Appellees "passed title, or other interest in the security," *Pinter*, 486 U.S. at 642, the AC necessarily added allegations about the structure of transactions on Coinbase.

Appellees attack the AC for *not* alleging facts about Appellees' user agreement. *See* Opp. 33. But Appellants properly omitted the user agreement from the AC because that contract plays no role in Appellants' theory of liability on any claim (least of all their new claims for sales of unregistered securities, which were added with approval of the district court). *See* Br. 37–38. That Appellants seek "to recover transaction fees as damages" on some claims, Opp. 27, does not change this analysis. Each purchase of a Token constitutes an individual contract in which users pay Coinbase consideration including a transaction fee. *See* Br. 54–55; *infra* Section II. At most, the user agreement is relevant only to calculating the *amount* of each transaction fee but has no bearing on whether such fees are illegal or recoverable as

damages, as Appellants have not sought to rescind the user agreement, and instead seek to rescind only the individual purchase agreements through the Section 29(b) and related state claims. *Infra* Section II.

Appellees further argue that it was improper "gamesmanship" to include allegations in the AC about the structure of Coinbase transactions, privity, and passage of title because these allegations, according to Appellees, "blatantly contradict prior allegations." Opp. 44. Appellees' argument is a transparent attempt to avoid the merits of a claim that the district court and Appellees acknowledge was well-pleaded in the AC. SPA-12. Appellees offer no reasoned argument that they are not in privity with their users—nor could they, given the centralized structure of the Coinbase exchanges, with all Tokens pooled in Coinbase-owned wallets. *See* JA-795 ¶ 33.

The allegations in the AC do not "contradict" any facts alleged in the initial complaint of Oberlander and Underwood. Lacking a Section 12(a)(1) direct-seller claim, the original complaint had no need to, and did not, address the *legal* issues of privity and title. *See Amalgamated Sugar Co. v. NL Indus., Inc.*, 825 F.2d 634, 640 (2d Cir. 1987) ("privity [is] a legal conclusion"). The allegations in the initial complaint by Oberlander and Underwood that Coinbase users "can enter into trade agreements with other Coinbase Platform users," JA-17–18 ¶ 27, and make purchases "through Coinbase," JA-88 ¶273, are colloquial statements that describe

7

how Coinbase transactions may *appear* to a lay trader. They do not, as Appellees argue, "render impossible any allegation of privity or passing of title between Plaintiffs and any Defendant." Opp. 18.

Even if the AC's allegations are inconsistent with the initial pleading, there is nothing nefarious about Appellants expanding their legal theories through an amended pleading brought, in part, by a new plaintiff and new counsel, duly appointed under the PSLRA. Here, Appellants improved on the original complaint by revising the legal claims and updating the allegations to better describe how transactions on Appellees' platforms are structured. Appellees provide no support for their suggestion that Oberlander and Underwood had personal "knowledge" about the back-end mechanics of trading on Appellees' platforms from the outset of this litigation. Opp. 45. These matters are peculiarly within *Appellees'* knowledge, and Appellants have developed their current understanding through the continuing investigation of the two law firms that represent them, only one of which represented Oberlander and Underwood in their initial complaint. Appellees thus have no basis to assert that Appellants' changed allegations about transaction structure resulted from gamesmanship.

The generalized invective in the Chamber's *amicus* brief about securities litigation and "plaintiffs' lawyers," *see* Chamber Br. 3, 5–15, is even further off-base. While the Chamber invokes supposed congressional intent, *id.* at 15, the

Chamber's position would undermine the PSLRA by encouraging a race to the courthouse and preventing the most adequate plaintiff(s) from controlling the litigation. *Infra* Section I.B.4. No caselaw supports the view that securities class actions should be kneecapped by prohibiting meritorious amendments.

> **2.   The Amended Complaint Is Consistent With Appellants' Prior Representations To The District Court**

Lacking valid criticisms of the AC, Appellees resort to misrepresenting the procedural history below.

To begin, Appellants did *not* "affirm[] the original complaint—and its reliance on the User Agreement—when seeking to be appointed co-lead plaintiffs." Opp. 1. Appellees cite language in Appellants' lead-plaintiff motion summarizing the initial complaint and noting that Oberlander's and Underwood's initial counsel had performed a "substantial investigation" and "invested substantial time." Opp. 8 (citing SA-11–12). But nothing in these accurate statements suggested that Appellants would refrain from further investigating their claims and updating their allegations. Indeed, the parties stipulated to, and the district court approved, a schedule that afforded Appellants two months from their appointment as lead plaintiffs to file the only amended complaint that has been filed in this action. Dist. Ct. ECF No. 23. This schedule would make little sense if Appellants were expected merely to refile the initial complaint with an updated caption, rather than to substantively investigate and revise the claims.

9

Similarly, as Appellees acknowledge, Opp. 8 (citing JA-412), Rodriguez's certification in support of his lead plaintiff motion authorized his counsel to file a new complaint "*comparable*"—not identical—to Oberlander's and Underwood's initial complaint.

Moreover, Appellants did not bind themselves to the initial complaint's allegations regarding the user agreement by seeking emergency relief to stop Appellees from their improper attempt to use an expanded arbitration clause to interfere with this litigation. Appellees now claim that the action prompting Appellants' emergency motion was merely "a normal course update to [the user] agreement," Opp. 30, but there was nothing "normal" about it: Appellees sought to undermine this proposed class action by unilaterally rewriting their arbitration agreement with Appellants and putative class members to, *inter alia*, expand the scope of mandatory arbitration, impose one-sided fee shifting for a successful motion to compel arbitration, and divest the district court of jurisdiction by requiring non-arbitrable claims to be litigated in California. JA-471–72, -502–06 (redline showing Appellees' attempt to replace one-page dispute resolution provision with new four-page provision).

Appellants' motion for injunctive relief did not concede that any arbitration provision applied to their claims, *see* Br. 41, and did not "assert[] the primacy" of

any user agreement, Opp. 30 (quoting SPA-15).[2] Even if some version of the user agreement governed the *procedure* for litigating or arbitrating disputes, that is unrelated to the *substance* of Appellants' allegations. Appellants' challenge to the attempted imposition of unfair new arbitration rules in the middle of the litigation does not imply any concession that *other provisions* of the user agreement were relevant, or that the initial complaint's allegations referencing that contract would not be amended.

At the preliminary injunction hearing, Appellants expressly disclosed their intent to amend the initial complaint, including by adding Section 12(a)(1) claims that would "follow logically as a factual matter from the previously pled claims." JA-770–71. The district court acknowledged at oral argument that Appellants were merely agreeing not to add completely unrelated or unexpected causes of action such as "copyright claims or something like that." JA-770. The district court's stipulated order listed five anticipated amendments (including the addition of Section 12(a)(1) claims) and noted that Appellants would not "otherwise change the *general* nature of the[ir] claims." JA-734–35 (emphasis added).

Appellees' desperate argument that Appellants "[f]lout[ed]" the district court's stipulated order by "[c]hanging the [n]ature of [t]heir [c]laims," Opp. 11, was

---

[2] Indeed, the stipulated order resolving the emergency motion reserved all rights as to the "enforceability and applicability of" the user agreement. JA-735–36.

not advanced below in briefing on Appellees' motion to dismiss. *See* Dist. Ct. ECF Nos. 59, 67. Appellees therefore waived the argument. *Torcivia v. Suffolk County*, 17 F.4th 342, 367 (2d Cir. 2021).

Even if this argument were not waived (it was), it is baseless. The AC fully complied with the order by preserving the Section 29(b) and state law claims against Coinbase Global, adding factually related claims under Section 12(a)(1) and state law analogues, and adding control-person claims against Coinbase and Brian Armstrong—all of which were disclosed in advance to the district court. Br. 10. Appellees' own caselaw recognizes that new claims "based on the same underlying 'realities'" as the original complaint do not change "the nature of the[] claims." *In re Herald*, 730 F.3d 112, 119 n.6 (2d Cir. 2013).

Appellants' addition of allegations regarding title and privity to support the new Section 12(a)(1) claims followed the roadmap of anticipated amendments they provided to the district court. This case thus bears no resemblance to *Palm Beach Strategic Income, LP v. Salzman*, where the plaintiff was allowed to amend its complaint only to address a narrow standing issue and improperly changed its liability theory. 457 F. App'x 40, 43–44 (2d Cir. 2012) (cited at Opp. 52).

12

### 3. Allegations In The Superseded Initial Complaint Are Not Judicial Admissions

Having properly amended the initial complaint, Appellants were entitled to have the AC considered on its own terms at the motion to dismiss stage. The district court erred by instead treating superseded allegations as binding judicial admissions.

Appellees do not dispute that Oberlander's and Underwood's initial allegations of privity and title addressed *legal* issues. *See* Br. 24; Opp. 45. Because they were not "statement[s] … of fact," these allegations never constituted conclusive judicial admissions. *In re Motors Liquidation Co.*, 957 F.3d 357, 360 (2d Cir. 2020).

Even if the allegations in the original complaint initially were judicial admissions of fact (they were not), they lost that status upon the filing of the AC. Appellees conflate "judicial admissions" with mere evidence of a prior inconsistent statement, Opp. 34 n.14, but the distinction is critical: Only allegations in the *operative* complaint are judicial admissions that bind the plaintiff conclusively. *See, e.g.*, *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528–29 (2d Cir. 1985). Superseded pleadings, by contrast, are merely "controvertible" evidence. *Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter, Inc.*, 32 F.2d 195, 198 (2d Cir. 1929). Giving conclusive effect to superseded allegations would be "contrary to the liberal amendment policy embodied in Rule 15." *West Run Student Housing Assocs.,*

*LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 172 (3d Cir. 2013).[3] The fact that four well-respected professors of civil procedure filed an *amicus* brief supporting these principles underscores how fundamentally the district court erred. ECF No. 66.

Appellees' caselaw does not support the use of superseded pleadings as judicial admissions. In several of Appellees' Second Circuit cases, this Court did not even *cite* any facts alleged in a prior pleading, much less rely on such allegations as conclusive judicial admissions. For instance, *Wright v. Green Tree Servicing LLC*, 685 F. App'x 67 (2d Cir. 2017), did not cite any prior pleading. The district court had stated that its consideration of a document attached to a prior complaint was *not* essential to its judgment, *Wright v. Green Tree Servicing LLC*, 2016 WL 4098404, *6 (S.D.N.Y. July 25, 2016), and this Court's non-precedential summary affirmance rested on wholly separate grounds. Similarly, *Scarola Malone & Zubatov LLP v. McCarthy, Burgess & Wolff* ("*SMZ*") summarily affirmed a judgment based exclusively on the allegations "in the second amended complaint." 638 F. App'x 100, 102 (2d Cir. 2016). No issue regarding the district court's reliance on the

---

[3] Contrary to Appellees' argument that Appellants "waive[d]" reliance on Rule 15, Opp. 51–52, Appellants expressly argued below that "binding [a] plaintiff to his previous complaint 'runs contrary to the Federal Rules' pronouncements that leave to file amended pleadings shall be freely given.'" Dist. Ct. ECF No. 62 at 11 (quoting *In re PXRE Grp., Ltd., Sec. Litig.*, 600 F. Supp. 2d 510, 525 (S.D.N.Y. 2009), *aff'd*, 357 F. App'x 393 (2d Cir. 2009)). The sentence of *PXRE Group* that Appellants quoted below paraphrases and cites Rule 15(a). 600 F. Supp. 2d at 525.

original complaint was raised on appeal,[4] and this Court did not cite that prior pleading and therefore did not embrace any reliance on it. *Id.* at 103. Likewise, *In re Herald* held only that the *operative* complaints alleged a "misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security." 730 F.3d at 119. The Court merely bolstered this conclusion by noting, in a footnote, that the plaintiffs had admitted "the nature of their claims" were the same in the original and amended pleadings. *Id.* at 119 n.6.[5]

The Second Circuit cases that Appellees cite for the proposition that "*[l]eave to amend* may be denied where a plaintiff attempts to 'erase' prior admissions," Opp. 52 n.26 (emphasis added), do not address the effect of a *filed* amended complaint, which is subject to a different legal standard. *See Laza v. Reish*, 84 F.3d 578, 581 (2d Cir. 1996) ("*Once an amended pleading is interposed*, the original pleading no longer performs any function in the case." (emphasis added)). And *Chen v. Antel Communications, LLC*, 653 F. App'x 43 (2d Cir. 2016), does not deal with amended pleadings at all.

---

[4] Appellant's Br., *SMZ*, 2015 WL 5450942 (2d Cir. Sept. 14, 2015); Appellant's Reply Br., *SMZ*, 2015 WL 6693790 (2d Cir. Oct. 30, 2015).

[5] In *Colliton v. Cravath, Swaine & Moore LLP*, the *district court* held that plaintiff's contract claims failed *regardless* of whether the court credited his initial allegation that he was an employee or his amended allegation that he was instead a specialist. 2008 WL 4386764, *6–7 (S.D.N.Y. Sept. 24, 2008). This Court's two-sentence summary affirmance was silent on whether the consideration of superseded allegations was appropriate. 356 F. App'x 535, 536 (2d Cir. 2009).

In Appellees' remaining non-precedential Second Circuit cases, this Court referred to prior allegations only in passing and did not treat them as judicial admissions. *James v. Bradley* held that an inmate's urinalysis form could be considered on a motion to dismiss because the "crux" of the operative amended complaint was an allegation about that form. 808 F. App'x 1, 3 (2d Cir. 2020). The urinalysis form had been attached to the original complaint, but this Court did not rely on that fact. *Id.* Here, unlike in *James*, the AC did not "incorporat[e]" any agreement by reference, and its "crux" is unrelated to the superseded allegations on which the district court relied. *See supra* Section I.B.1; *infra* Section I.C.1.

Similarly, in *Delaney v. Farley*, this Court based its summary affirmance on plaintiff's concession at oral argument, which "conclusively demonstrate[d]" that the statute of limitations had expired. 623 F. App'x 14, 16 (2d Cir. 2015). The Court remarked but did not rely on the fact that this concession was "[c]onsistent with allegations in [the] original complaint." *Id.*

Appellees' effort to find support for the district court's error in Seventh, Eighth, and Ninth Circuit caselaw also fails. The Seventh Circuit has consistently held that a "prior pleading is in effect withdrawn as to all matters not restated in the amended pleading and becomes functus officio." *188 LLC v. Trinity Industries, Inc.*, 300 F.3d 730, 735–36 (7th Cir. 2002). In *Orgone Cap. III, LLC v. Daubenspeck*, the Seventh Circuit held only that, in analyzing the statute of limitations, the district

court could take *judicial notice* of undisputed matters in the public domain and the fact that plaintiffs had alleged these matters in their original complaint. 912 F.3d 1039, 1048 (7th Cir. 2019). These public facts were judicially noticeable because plaintiffs had *failed* to "expressly contradict" their prior allegations, *id.*—the opposite of what the district court faulted Appellants for purportedly doing here.

The Eighth Circuit holds that amended pleadings control on a motion to dismiss, unless the amendment was "involuntary." *See In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000). Appellees rely on inapposite caselaw to suggest otherwise. *See Miller v. Redwood Toxicology Lab'y, Inc.*, 688 F.3d 928, 931 (8th Cir. 2012) (reciting background based on "initial and amended complaints" but not relying on any purported admission from initial complaint); *Dudek v. Prudential Sec., Inc.*, 295 F.3d 875 (8th Cir. 2002) (no reliance on superseded pleadings).

The Ninth Circuit also recognizes that "[w]hen a complaint containing a judicial admission is amended, the information admitted in the original complaint is no longer conclusively established." *Maloney v. Scottsdale Ins. Co.*, 256 F. App'x 29, 32 (9th Cir. 2007). *Rodriguez v. Sony Computer Entertainment America, LLC*, 801 F.3d 1045 (9th Cir. 2015), is not to the contrary. There, the second amended complaint's allegations contradicting the prior complaint were dismissed because, unlike here, they exceeded the scope of amendment permitted by the district court

17

and, even as amended, failed to state a claim on their face. *Rodriguez*, 801 F.3d at 1048–49, 1054.[6]

Unable to overcome the overwhelming number of appellate decisions rejecting their position, Appellees rely heavily on district court cases. But none of these cases involves class actions, let alone class actions subject to the PSLRA or ones involving a new lead plaintiff with the largest losses who did not join in the initial complaint. In any event, these district court opinions are readily distinguishable.

Most of Appellees' district court cases involve amended pleadings that directly contradict the original pleading on facts within the plaintiff's *personal* knowledge. *See, e.g.*, *Forrest v. N.Y.C. Hous. Auth.*, 2023 WL 3203646, at *7 (S.D.N.Y. May 2, 2023) (crediting original allegation as to "a 'fact' within Plaintiff's knowledge"); *Scarola Malone & Zubatov LLP v. Verizon Commc'ns, Inc.*, 2015 WL 3884211, at *5 (S.D.N.Y. June 24, 2015); *Delaney v. Farley*, 2014 WL 5795562, at *4 (S.D.N.Y. Nov. 7, 2014); *Wheeler v. Slanovec*, 2019 WL 2994193, at *6 (S.D.N.Y. July 9, 2019); *Romain v. Cap. One, N.A.*, 2013 WL 6407731, at *3

---

[6] Appellees and the Chamber meekly attempt to support the district court's disregard of the AC with cases involving motions to dismiss "on preemption or jurisdictional grounds." Opp. 39 n.17; *see also* Chamber Br. 18. These cases are inapposite as they do not address the effect of amended pleadings under Rule 12(b)(6), let alone in the context of the PSLRA.

(E.D.N.Y. Dec. 9, 2013). But the AC here did not directly contradict the initial complaint, and in any case, Appellants lack personal knowledge of the structure of Coinbase transactions, for which they rely on their counsel's investigation. *Supra* I.B.1.

Appellees also rely on district court cases where *documents* attached to prior complaints were considered, either (1) because they were "integral" to the operative complaint, *Poindexter v. EMI Record Grp. Inc.*, 2012 WL 1027639, at *2–3 (S.D.N.Y. Mar. 27, 2012); or (2) in the "rare" circumstance where the court had already ruled that the documents "contradicted the Complaint's allegations" and would "inevitably" reprise that ruling, *James v. Gage*, 2019 WL 1429520, at *7 (S.D.N.Y. Mar. 29, 2019). Here, by contrast, the user agreement is not integral to the AC and does not foreclose Appellants' claims, much less "inevitably" so. *See infra* Section I.C.[7]

Thus, no precedent authorized the district court to ignore allegations that it found to "contradict" the original complaint of Oberlander and Underwood. Even if

---

[7] For the same reason, the Chamber's circular argument that district courts should look to superseded allegations to expedite the dismissal of amended complaints "when the outcome is a *fait accompli*," Chamber Br. 16 (citing Fed. R. Civ. P. 1), is a red herring. Consideration of the user agreement, whether at the pleading stage or after discovery, does not render the outcome of this case a *fait accompli*, particularly as neither the district court nor Appellees have disputed that the AC adequately pleads Section 12(a)(1) claims, which in fact are *supported* by versions of the user agreement. *See infra* Section I.C.2.

19

this Court were to agree in principle with Appellees' novel proposed rule (which it should not), it would be inequitable to apply this rule retroactively to Appellants, who filed the AC in good-faith reliance on settled doctrine and practice regarding the plenary authority of a plaintiff appointed under the PSLRA to amend the initial complaint.

### 4.    The PSLRA Requires Giving Effect To Amended Pleadings

By preventing Appellants from revising their allegations after their appointment as lead plaintiffs, Appellees' proposed new doctrine would undermine the PSLRA's purposes of optimizing representation for the class and preventing a race to the courthouse.

The PSLRA assigns control of securities class actions to the plaintiff "most capable of adequately representing the interests of class members," 15 U.S.C. §§ 77z-1(a)(3)(B)(i), 78u-4(a)(3)(B)(i). Moreover, the most adequate plaintiff is presumed to be whoever demonstrates the largest losses—here, Rodriguez. *See id.* §§ 77z-1(a)(3)(B)(iii)(I)(bb), 78u-4(a)(3)(B)(iii)(I)(bb); JA-431. For Rodriguez to control this litigation as contemplated by the PSLRA, he needed to file an amended complaint, since he was not named as a plaintiff in the initial complaint. And for the putative class to reap the full benefits of representation by the most capable plaintiffs and their counsel, the appointed lead plaintiffs needed latitude to file the best AC they could based upon the facts. In viewing the case as irreversibly constrained by

20

the initial plaintiffs' allegations, Appellees and the district court would stymie future lead plaintiffs' efforts to represent the interests of class members by encouraging a race to the courthouse, and thereby undermining the purpose and structure of the PSLRA.

Appellees do not meaningfully address these concerns. They observe that the PSLRA does not require an individual to file a complaint to be appointed lead plaintiff, Opp. 49–50, but this option does not solve the problem that, under the district court's rule, a prospective lead plaintiff who disagreed with any aspect of another plaintiff's initial complaint would need to file a new complaint <u>and</u> engage in a disputed lead plaintiff process. The solution to this needless problem, and the unnecessary motion practice it would create, is to allow lead plaintiffs to amend the initial complaint freely and effectively, as Rule 15 provides.

### 5.   Rodriguez Never Consented To Be Bound By All Allegations In The Initial Complaint

Even if the district court had properly treated the initial allegations as binding on Oberlander and Underwood, the same reasoning would not apply to Rodriguez, who never filed any complaint in this litigation other than the AC that the district court disregarded. Br. 30–35.

Appellees do not defend the district court's erroneous reasoning that Rodriguez's "interests [were] adequately represented by" the initial plaintiffs. SPA-13–14 n.5 (cleaned up). Appellees instead argue that Rodriguez should be bound to

21

the original complaint because "he unequivocally endorsed it." Opp. 51. This is false. No Appellant—least of all Rodriguez—agreed to ossify the initial complaint's allegations by moving for lead-plaintiff status, by saying he would file a "comparable" (but not identical) amended complaint, by seeking emergency relief, or by entering a stipulation to resolve the emergency motion. *See supra* Section 1.B.2. None of Rodriguez's statements comes close to waiving his right to control the content of the operative complaint, which is after all the point of the PSLRA's lead plaintiff process.

## C. The Coinbase User Agreement Does Not Support Dismissal

### 1. No User Agreement Was Before the District Court

The district court further erred by considering the Coinbase user agreement.

*First*, even if Oberlander's and Underwood's initial complaint incorporated the user agreement by reference, that is irrelevant because those initial allegations were superseded when the AC was filed. *See supra* Section I.B.3. Nor did Appellants retroactively incorporate any version of the user agreement into the then-operative complaint by filing their emergency motion to protect this litigation against an unfair expansion of Coinbase's arbitration clause.[8] *See supra* Section I.B.2.

---

[8] Appellees' cited district court cases, *see* Opp. 31–32, do not suggest otherwise. *First Lincoln Holdings, Inc. v. Equitable Life Assurance Society* noted only that plaintiffs have "notice" of documents attached to emergency motions. 164 F. Supp. 2d 383, 386 n.3 (S.D.N.Y. 2001). But "mere notice or possession is not enough" to

*Second*, Appellees contend that the user agreement is integral *to the AC* because that pleading seeks remedies including rescission. Opp. 5 n.1, 28–29. But the AC does not seek to rescind the *user agreement*; it seeks rescission of individual purchases and sales—each of which constitutes a separate contract. *See* Br. 54. Although Appellees state that the December 2021 version of the user agreement "provides the basis for [Coinbase] to charge … transaction fees," Opp. 29, the agreement itself states that transaction fees are calculated and charged based on separate transactions, *see* JA-451. Unlike in Appellees' cited cases, the AC does not rely on or make allegations about the user agreement. *See Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196–97 (2d Cir. 2005); *Int'l Audiotext Network, Inc. v. AT&T Co.*, 62 F.3d 69, 72 (2d Cir. 1995).

The district court accordingly should have resolved the motion to dismiss without relying on the user agreement. This is not, as Appellees suggest, a matter of "pretend[ing]" the user agreement "did not exist." Opp. 2. The user agreement's existence is not in dispute. What *is* in dispute is the legal issue of whether privity existed between Plaintiffs and Coinbase. While Appellees contend that the user agreement "forecloses" a finding of privity, Opp. 1, evidence will show (and has

---

make those documents integral to the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). *Telebrands Corp. v. Del Laboratories, Inc.* is similarly inapposite as it relied on an emergency motion exhibit to *deny* a motion to dismiss on *standing* grounds. 719 F. Supp. 2d 283, 290 (S.D.N.Y. 2010).

shown) that Coinbase *admitted* in its prior user agreements that privity exists between itself and Plaintiffs. *See infra* Section I.C.2. In any event, it is premature at the pleading stage to rely on the user agreement because there are "material disputed issues of fact regarding [its] relevance." *U.S. ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021).[9]

### 2. The District Court Erred In Granting Conclusive Weight To Coinbase's Self-Serving And Unilateral Disclaimer Of Ownership In A Later Version Of The User Agreement

Even if the user agreement were integral to the original complaint (it was not), the district court erred in granting controlling weight to the user agreement's assertions, which no Appellant ever accepted, regarding title to the Tokens. Prior versions of the user agreement, including those offered to each Appellant, either represented that users were in privity with Coinbase or were silent on the issue. *See* Br. 43–44.

Appellees do not dispute that the September 2017 version offered to Oberlander and Underwood contained none of the language from the December 2021 version about transacting counterparties and title to tokens on which the district court relied in granting the motion to dismiss. *See* JA-546–78. Appellees argue that

_____

[9] Appellees' attempt to cabin *Foreman* to disputes over the "authenticity" of documents, Opp. 29–30 n.12, ignores this Court's holding that resort to extrinsic documents is appropriate only when *both* "the authenticity or accuracy of the document" *and* "the relevance of the document" are undisputed. *Foreman*, 19 F.4th at 106.

the December 2019 version offered to Rodriguez refutes Appellants' allegations about passage of title. Opp. 47 n.21 (citing JA-700 § 2.6.1). But the December 2019 version *supports* Appellants' position, as it admits Coinbase is a direct seller: "When you purchase (buy) Digital Currency *from Coinbase* … this transaction is intended to effect a sale of Digital Currency," JA-702 § 3.2 (emphasis added); *see also* JA-622 § 3.2 (Jan. 2019 version) (same); JA-551 § 4.1 (Aug. 2017 version) ("[T]he act of purchasing supported Digital Currency *from Coinbase* does not result in a guarantee that you may sell your supported Digital Currency *to Coinbase*." (emphasis added)); JA-586 § 4.1 (Oct. 2018 version) (same). These discrepancies preclude giving conclusory effect to any version of the user agreement at the pleading stage, where factual disputes must be resolved in favor of plaintiffs.

Moreover, all versions of the Coinbase user agreement are governed by California law, Br. 40 n.3, which does not permit unilateral modifications of adhesive consumer contracts to bind consumers without their affirmative consent, *see* Br. 44–45. Appellees ignore this rule, and they are wrong in arguing that it does not matter which version of the user agreement bound a particular plaintiff or class member, *see* Opp. 46–47, given the material differences between versions.

Beyond these factual discrepancies, the conclusory *ipse dixit* in the later December 2021 version of the user agreement that title "shall at all times remain with [the user] and shall not transfer to Coinbase," Opp. 6 (quoting JA-1047 § 2.6.1),

cannot be determinative. Appellees' self-serving assertion about who holds title is no more conclusive than a note stating, "We are not violating any laws." The facts are otherwise.

Affirming the decision below would effectively turn the most recent user agreement's disclaimer into an unlawful waiver of securities claims. *See* Br. 46–47. Appellees unpersuasively attempt to distinguish *McMahan & Co. v. Wherehouse Entertainment, Inc.*, 65 F.3d 1044 (2d Cir. 1995), because it involved "a no-action clause," Opp. 47, but just like the clause in *McMahan*, Coinbase's unilateral disclaimer, as interpreted by the district court, unlawfully "operate[s] to bar [Appellants] from exercising [their] substantive rights under federal securities law," 65 F.3d at 1051. Accordingly, the district court erred by granting conclusive weight, on a motion to dismiss, to selected statements in the December 2021 version of Coinbase's user agreement, particularly as those statements contradicted earlier versions of the user agreement.

## II. Appellants Properly Plead Primary And Control-Person Claims Under The Exchange Act

Appellees mischaracterize Appellants' argument by focusing on whether the user agreement is a lawful contract. Opp. 24. But Appellants have never challenged the user agreement as *per se* unlawful. Appellants have instead alleged and argued that "each transaction in a Token on the Coinbase Exchanges" is an unlawful contract, which is voidable under the Exchange Act. JA-1011 ¶ 962.

Appellees argue that the AC did not "plead the terms of any purported transaction-specific contracts," Opp. 25, but the sales terms are evident from the AC: Appellants and others paid money to Coinbase in exchange for the Tokens. Appellees criticize Appellants for "analogiz[ing] to retail shopping" cases, Opp. 25–26, but Appellees do not offer any caselaw to support their untenable position that a purchase or sale does not give rise to an individual contract voidable under Section 29(b).

And the retail analogy is an apt one. When a consumer buys a product at the local grocery store, an implied-in-fact contract is formed. *See, e.g.*, *Garrett v. Tandy Corp.*, 295 F.3d 94, 100 & n.3 (1st Cir. 2002) ("Each time a customer takes an item off the shelf, a new contract looms[.]"); Br. 54–55. If that same consumer instead shops at Costco, which requires a membership to enter, the result is the same—an implied-in-fact contract is formed at time of sale between Costco and the customer to purchase that product, *irrespective* of whether the customer previously entered into a separate membership agreement with Costco.

The same hornbook law applies to Coinbase: each trade results in a new contract for the sale of a security. *See* 23 Williston on Contracts § 62:22 (4th ed.) ("[T]he broker having acted in accordance with the customer's instructions, a binding contract is created[.]"). Those individual trade contracts in unregistered securities—each of which was illegal—are distinct from any initial user agreement

into which the customer may also enter. In any event, whether each sale gives rise to a legally distinct contract is a fact issue inappropriate for resolution on the pleadings. *See, e.g.*, *Normerica Int'l Corp. v. LitterPurrfect, L.P.*, 2018 WL 4489624, at \*4–5 (S.D. Cal. Sept. 19, 2018) (summary judgment inappropriate because of "contested factual issues" where plaintiff argued that "each purchase order could be construed as a series of express contracts" while defendant claimed that "the relationship between the parties is governed by the Management Agreement" (cleaned up)); *Citizens for Amending Proposition L v. City of Pomona*, 239 Cal. Rptr. 3d 750, 776 (Cal. Ct. App. 2018) (Under California law, "whether such an implied-in-fact agreement exists is a factual question for the trier of fact unless the undisputed facts can support only one reasonable conclusion." (citation omitted)).

## III. Appellants Properly Plead Claims Under State Securities Laws

The district court did not reach the merits of Appellants' state law claims because it erroneously ignored its original jurisdiction under CAFA, which Appellees concede was error. Opp. 55. Should this Court reach the merits of Appellants' state law claims, it should reverse their dismissal.

*First*, Appellees concede that each state statutory provision under which Appellants sue is at least as broad as the analogous federal provision. The state law claims therefore should be reinstated for the reasons discussed above.

*Second*, even if Appellants' federal Section 29(b) claims were properly dismissed because there was not a separately voidable contract (which Appellants dispute), the state counterparts to those claims are materially broader. Appellees all but explicitly concede this: They argue that "if Congress wanted Section 29(b) to apply to individual transactions, it would have said so," Opp. 26 (contrasting the breadth of Section 29(b) to Appellants' state law claims). Appellees cannot dispute that the legislatures of California, Florida, and New Jersey *did exactly that*.

Unlike Section 29(b), these state statutes do not predicate rescission on the existence of an unlawful "contract." The state claims instead provide for rescission of illegal *purchases and sales*, which undoubtedly occurred here. *See* Br. 58; *accord* Opp. 55–56. Thus, Appellees' caselaw holding that Section 29(b) does not apply to "unlawful transactions made pursuant to lawful contracts," Opp. 23–24, even if correct, has no bearing on Appellants' *state* claims, which require only a purchase or sale of an unregistered security. That Appellants' state claims may also require privity, Opp. 56—which they have amply pleaded, *see supra* Section I.A—does not mean they also require, contrary to their text, identification of a "contract" that "cannot be performed without violating the securities laws." Opp. 24. Because the state law claims have been adequately pleaded under the district court's CAFA jurisdiction, the dismissal should be reversed.

## **<u>CONCLUSION</u>**

For the reasons set forth above and in Appellants' opening brief, Appellants respectfully request that this Court reverse the dismissal of Appellants' Amended Complaint and remand to the district court for further proceedings.

Dated: September 13, 2023            Respectfully submitted,

SELENDY GAY ELSBERG PLLC     SILVER GOLUB & TEITELL LLP

_/s/ Jordan A. Goldstein_         _/s/ Steven L. Bloch_
Jordan A. Goldstein           Steven L. Bloch
1290 Avenue of the Americas, 17th Floor    One Landmark Square, 15th Floor
New York, New York 10104       Stamford, Connecticut 06901
(212) 390-9000              (203) 325-4491

*Attorneys for Plaintiffs-Appellants*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel for Plaintiffs-Appellants certifies pursuant to Federal Rule of Appellate Procedure 32(g) that this reply brief:

1.      complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(e) and Local Rule 32.1(a)(4)(B) because it contains 7,000 words, including footnotes and excluding the parts of the brief exempted by Federal Rules of Appellate Procedure 32(f); and

2.      complies with the typeface and style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft Office 365 in 14-point Times New Roman.

Dated: September 13, 2023                    /s/ *Jordan A. Goldstein*
                                             Jordan A. Goldstein

                                             *Attorneys for Plaintiffs-Appellants*