# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of April, two thousand twenty-four.

PRESENT:
> PIERRE N. LEVAL,
> REENA RAGGI,
> JOSEPH F. BIANCO,
> > *Circuit Judges*.

_____

LOUIS OBERLANDER, on behalf of himself and all others similarly situated, CHRISTOPHER UNDERWOOD, on behalf of himself and all others similarly situated, HENRY RODRIGUEZ,

> *Plaintiffs-Appellants*,

ZENEYDA PATIN, on behalf of themselves and all others similarly situated,

> *Plaintiff*,

v.                                                              23-184-cv

COINBASE GLOBAL INC., COINBASE, INC., BRIAN ARMSTRONG,

> *Defendants-Appellees*.

_____

| | |
|---|---|
| FOR PLAINTIFFS-APPELLANTS: | JORDAN A. GOLDSTEIN, Selendy Gay PLLC, New York, New York (Steven L. Bloch, Silver Golub & Teitell LLP, Stamford, Connecticut, *on the brief*). |
| FOR DEFENDANTS-APPELLEES: | LARA A. FLATH (Jay B. Kasner, Alexander C. Drylewski, and Abigail E. Davis, *on the brief*), Skadden, Arps, Slate, Meagher & Flom LLP, New York, New York. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Paul A. Engelmayer, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment, entered on February 1, 2023, is **REVERSED** in part and **AFFIRMED** in part.

Plaintiffs-Appellants Louis Oberlander, Christopher Underwood, and Henry Rodriguez (collectively, "Plaintiffs") appeal from a judgment dismissing their amended complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, against Defendants-Appellees Coinbase Global, Inc., Coinbase, Inc., and Brian Armstrong (collectively, "Coinbase"). Coinbase operates online trading platforms where users can buy and sell cryptocurrencies, also known as crypto-assets. The amended complaint asserts federal claims under Sections 5, 12(a)(1), and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77e(a), 77e(c), 77*l*(a)(1), 77o(a); and Sections 5, 15(a)(1), 20(a), and 29(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78e, 78o(a)(1), 78t(a), 78cc(b), on behalf of a nationwide class consisting of all persons or entities who bought or sold certain crypto-assets (the "Tokens") on the Coinbase trading platforms between October 8, 2019 and the filing of the amended complaint on March 11,

2022. The amended complaint also asserts state law claims under the securities laws of California, Florida, and New Jersey on behalf of subclasses of citizens of those three states. We review a dismissal under Rule 12(b)(6) *de novo*, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir. 2007). In doing so, we assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, which we reference only as necessary to explain our decision.

The amended complaint asserts two claims under the Securities Act: one against Coinbase Global, Inc. and Coinbase, Inc., for the offer and sale of unregistered securities under Sections 5 and 12(a)(1) of the Securities Act; and one against Coinbase Global, Inc. and Brian Armstrong, for control-person liability under Section 15 of the Securities Act, based on the violations in Count One. Section 12(a)(1) of the Securities Act provides that "[a]ny person who[] offers or sells a security in violation of [Section 5 of the Securities Act] . . . shall be liable . . . to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon . . . ."[1] 15 U.S.C. § 77*l*(a)(1). Section 5(c) provides that "[i]t shall be unlawful for any person, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy . . . any security, unless a registration statement has been filed as to such security . . . ." *Id*. § 77e(c). Importantly, "the list

---

[1] Coinbase does not contest for purposes of the motion to dismiss that the Tokens are "securities" under the Securities Act, as well as the Exchange Act, but reserves the right (as it did in the district court) to address that issue should Plaintiffs' claims survive the motion to dismiss.

of potential defendants in a [S]ection 12(a)([1]) case is governed by a judicial interpretation of [S]ection 12 known as the 'statutory seller' requirement." *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 359 (2d Cir. 2010).[2] Under the Supreme Court's decision in *Pinter v. Dahl*, 486 U.S. 622 (1988), a defendant is a "statutory seller" governed by Section 12(a)(1) if it either (1) "passed title, or other interest in the security, to the buyer for value," *id*. at 642 (analogizing the contemplated "buyer-seller relationship" to "traditional contractual privity"), or (2) "successfully solicit[ed] the purchase [of a security], motivated at least in part by a desire to serve [its] own financial interests or those of the securities['] owner," *id*. at 647.

Here, the district court relied on the initial complaint and the December 2021 version of the Coinbase User Agreement (the "December 2021 User Agreement")[3] to find that Coinbase did not hold title to the Tokens that Plaintiffs purchased and, thus, was not a statutory seller subject to liability under prong one of *Pinter*. *See Underwood v. Coinbase Glob., Inc.*, 654 F. Supp. 3d 224, 236–38 (S.D.N.Y. 2023). More specifically, although the amended complaint does not reference any user agreement—and specifically alleges that privity was solely between Coinbase and Plaintiffs, and that Coinbase held title to the Tokens that were the subject of the transactions at issue—the district court "decline[d] to credit the [amended complaint's] allegations as to privity and title" because it found that those allegations contradicted certain allegations in the initial complaint and provisions of the December 2021 User Agreement, which the district court found

---

[2] Although the *Morgan Stanley* decision analyzed Section 12(a)(2) of the Securities Act, we have also applied the statutory seller requirement to claims arising under Section 12(a)(1). *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 49 (2d Cir. 1991).

[3] The parties agree that the district court relied upon the December 2021 version of the user agreement when it erroneously referred to the December 2020 version as the relevant agreement.

was incorporated by reference in the initial complaint. *Id*. at 238. Concluding that Plaintiffs likewise failed to allege solicitation under prong two of *Pinter*, the district court dismissed the Securities Act claims.[4]

The district court similarly relied in part on the allegations in the initial complaint and the December 2021 User Agreement in dismissing the Exchange Act claims against Coinbase Global, Inc. and Coinbase, Inc. As relevant here, Section 29(b) provides that "[e]very contract made in violation of any provision of this chapter or of any rule or regulation thereunder, and every contract . . . the performance of which involves the violation of, or the continuance of any relationship or practice in violation of, any provision of this chapter or any rule or regulation thereunder, shall be void . . . ." 15 U.S.C. § 78cc(b). Plaintiffs alleged that each transaction involving the purchase or sale of any Token constituted a separate contract for purposes of Section 29(b). After finding that the amended complaint did not "identify any transaction-specific contract," *Underwood*, 654 F. Supp. 3d at 241, the district court concluded that Plaintiffs' initial complaint precluded them, in any event, from pursuing this theory:

> As pled, the only contract capable of rescission here under Section 29(b) is the User Agreement. Plaintiffs' initial Complaint is again telling on this point, on its own terms and insofar as it incorporates by reference the User Agreement, as reviewed above. The Complaint expressly alleges that "Coinbase entered into contracts via the Coinbase User Agreement, with Plaintiffs and the members of the Class and Subclasses, *pursuant to which* Plaintiffs purchased Digital Asset Securities through Coinbase and paid Coinbase fees for the use of its securities exchanges." Compl. ¶ 273 (emphasis added). This allegation destroys the [amended complaint's] Exchange Act claims, insofar as it tracks, virtually verbatim, the statutory standard. It is again no escape for plaintiffs to have filed an Amended Complaint that excises all references to the User Agreement, for the reasons above[.] By stripping away all references to the User Agreement, the [amended complaint] is able to add

---

[4] Because of the dismissal of Plaintiffs' claims under Sections 5 and 12(a)(1), the district court also dismissed the Section 15 claim for control-person liability, which was premised upon the alleged primary violation.

> Exchange Act claims permitting rescission. But once plaintiffs' earlier allegations in the Complaint as to the same transactions regarding the Tokens are treated as cognizable, the [amended complaint's] bid to pursue claims for rescission based on a course of dealings not involving the User Agreement becomes unsustainable.

*Underwood*, 654 F. Supp. 3d at 241–42.[5]

On appeal, as a threshold matter, Plaintiffs argue that the district court erred in relying on allegations in the initial complaint and provisions in the December 2021 User Agreement to dismiss their federal claims because, on a motion to dismiss, a district court must "look only to the allegations in [the plaintiff's] most recent complaint as it is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." *Dluhos v. Floating and Abandoned Vessel, Known as New York*, 162 F.3d 63, 68 (2d Cir. 1998) (internal quotation marks and citations omitted). While Coinbase contends that the district court properly discredited the allegations in the amended complaint that contradicted the initial complaint and the December 2021 User Agreement incorporated therein, Plaintiffs argue that the district court possesses no such discretion under our precedents.

As to the district court's reliance on allegations in the initial complaint, we have long held that an allegation in a superseded pleading "ceases to be a conclusive judicial admission," even as it may remain "competent evidence" for submission to the factfinder. *Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter, Inc.*, 32 F.2d 195, 198 (2d Cir. 1929); *see Tho Dinh Tran v. Alphonse Hotel Corp.*, 281 F.3d 23, 32 (2d Cir. 2002) (explaining that "[a] statement in a withdrawn complaint that is superseded by an amended complaint without the statement is no longer a conclusive judicial admission," although "the factfinder may very well find that such a contradictory

---

[5] Because of a lack of a primary violation under the Exchange Act, the district court similarly dismissed the Section 20 claim for control-person liability.

statement reduces the credibility of the witness"), *overruled in part on other grounds by Slayton v. Am. Express Co.*, 460 F.3d 215 (2d Cir. 2006).[6] This principle obtains even where an amended pleading is inconsistent with the original. *See McCray v. Lee*, 963 F.3d 110, 119 (2d Cir. 2020) ("[E]ven if plaintiff's statements in an earlier complaint are determined to be inconsistent with allegations in the superseding complaint, if not repeated they are not part of the operative complaint. Though the prior statements may be admissible against the plaintiff in later stages of the proceedings as admissions, consideration of a motion under Rule 12(b)(6) is limited to the contents of the operative complaint and documents attached to it or incorporated into it by reference." (citations omitted)).

As to the December 2021 User Agreement, Coinbase argues that it was properly considered because, *inter alia*, it was integral to the amended complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference. Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." (internal quotation marks and citations omitted)). Plaintiffs point out, however, that "[t]he [a]mended [c]omplaint does not mention, attach, or refer to any version of the user agreement." Appellants' Br. at 37. Plaintiffs further argue that no version of

---

[6] Several of our sister circuits and leading commentators agree. *See, e.g.*, *West Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 171 (3d Cir. 2013); *InterGen N.V. v. Grina*, 344 F.3d 134, 145 (1st Cir. 2003); *188 LLC v. Trinity Inds., Inc.*, 300 F.3d 730, 736 (7th Cir. 2002); *Shell v. Parrish*, 448 F.2d 528, 530 (6th Cir. 1971); *see also* Wright & Miller, *Federal Practice and Procedure* § 1476 (3d ed.) ("[A]llegations in a pleading that has been withdrawn may be allowed into evidence as an admission of the party, but ordinarily must be offered in evidence if they are to be used for this purpose.").

the user agreement is integral to the amended complaint because they did not rely upon the terms and effect of any user agreement in support of their claims.

We need not resolve this threshold issue because we conclude that, even assuming *arguendo* that any user agreement was properly considered by the district court on the motion to dismiss, the district court did not properly assess *which version* of the user agreement would be applicable to Plaintiffs' claims, and the differing language in the various user agreements that plausibly apply to Plaintiffs' claims precludes resolution of the title and privity issues on a motion to dismiss. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (emphasizing that "even if a document is integral to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document" and "[i]t must also be clear that there exist no material disputed issues of fact regarding the relevance of the document" (internal quotation marks and citation omitted)); *see also Goel v. Bunge, Ltd.*, 820 F.3d 554, 560 (2d Cir. 2016) (cautioning against "the improper transformation of the Rule 12(b)(6) inquiry into a summary-judgment proceeding—one featuring a bespoke factual record, tailor-made to suit the needs of [the movants]").

The district court acknowledged that Coinbase "periodically updated and revised the user agreement," but considered only the December 2021 version because it was "in effect during the Class Period" and "contain[ed] substantially similar relevant language" to the other versions. *Underwood*, 654 F. Supp. 3d at 236 n.5. However, other versions of the user agreement in effect during the class period in fact contained materially different language. For example, the district court relied in part on language in Section 3.2 of the December 2021 User Agreement, stating, "[w]hen you purchase (buy) or sell Digital Currency on the Coinbase Site, you are not buying

8

Digital Currency from Coinbase or selling Digital Currency to Coinbase." *Underwood*, 654 F. Supp. 3d at 237. However, different language in the same section of the version in effect at the beginning of the class period suggested the opposite. *See* App'x at 661 (October 2019 User Agreement) ("When you purchase (buy) Digital Currency *from Coinbase* . . . this transaction is intended to effect a sale of Digital Currency." (emphasis added)); *see also id*. at 702 (December 2019 User Agreement). In light of the varying language in different versions of the user agreement in effect during the class period, the district court could not treat the December 2021 version as conclusive for purposes of evaluating the legal sufficiency of the amended complaint. In short, based on the allegations in the amended complaint, Plaintiffs have plausibly alleged claims under Section 12(a)(1) that survive a motion to dismiss under prong one of *Pinter* and we conclude that the district court erred in dismissing those claims.[7]

We reach a different conclusion, however, with respect to the Exchange Act claims. The district court correctly determined that the amended complaint failed to "identify any transaction-specific contract" capable of rescission under Section 29. *Underwood*, 654 F. Supp. 3d at 241. The amended complaint only included a variable fee schedule and stated generally that class members purchased various tokens on "one or more occasions." App'x at 812. Plaintiffs suggest that the absence of any allegations regarding the date or material terms of any transaction-specific

---

[7] Plaintiffs also note that we have held that "privity [is] a legal conclusion" and argue that, even if the December 2021 User Agreement is the applicable contract, its language is not controlling as to legal issues such as title and privity at this stage. *See Amalgamated Sugar Co. v. NL Indus., Inc.*, 825 F.2d 634, 640 (2d Cir. 1987) (internal quotation marks and citation omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). We need not resolve this question given our conclusion that Plaintiffs adequately pled that Coinbase was a statutory seller under prong one of *Pinter*. Nor do we reach Plaintiffs' argument that the district court further erred in finding that the amended complaint failed to plead adequately that Coinbase was a statutory seller under prong two of *Pinter*.

9

contract is not fatal to their Section 29 claims because the terms are "evident" from the amended complaint's allegations that Plaintiffs "paid money to Coinbase in exchange for the Tokens." Appellants' Reply at 27. We disagree. The repetitive, conclusory allegations that Plaintiffs "had one or more losing transactions" in various Tokens are insufficient to plausibly allege a contract that gives rise to rescission under Section 29. App'x at 811 ¶ 85 (1INCH), 812 ¶ 90 (AAVE), 813 ¶ 95 (ACH), 822 ¶ 135 (AGLD), 828 ¶ 163 (ALGO), 835 ¶ 179 (AMP), 836 ¶ 184 (ANKR), 837 ¶ 189 (ARPA) *et alia*; *see also Kirschner v. JP Morgan Chase Bank, N.A.*, 79 F.4th 290, 303 (2d Cir. 2023) ("[C]onclusory allegations are not entitled to the assumption of truth, and a complaint will not survive a motion to dismiss unless it contains sufficient factual matter, accepted as true, to state a claim that is plausible on its face." (internal quotation marks and citation omitted)). Accordingly, the district court properly dismissed the Section 29 claims.[8]

Finally, with respect to the state law claims, the district court erred in dismissing those claims under the discretionary doctrine of supplemental jurisdiction under 28 U.S.C. § 1367(c)(3). The amended complaint does not invoke supplemental jurisdiction for the state law claims, but rather properly pled original diversity jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2). *See L.S. v. Webloyalty.com, Inc.*, 954 F.3d 110, 117 (2d Cir. 2020) (holding it was error to dismiss a state law claim for lack of subject matter jurisdiction, after declining to exercise supplemental jurisdiction, where the complaint adequately pled an alternative basis for

---

[8] Because of a lack of a primary violation under the Exchange Act, the district court properly dismissed the Section 20 claim for control-person liability. *See Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 356 (2d Cir. 2022) ("To state a claim under Sections 20(a) and 20A of the Exchange Act, a plaintiff must allege a primary violation . . . ."). We also conclude that the district court properly denied leave to amend with respect to the Exchange Act claims because Plaintiffs did not demonstrate "that the complaint's defects can be cured." *Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006) (per curiam).

original jurisdiction under the Class Action Fairness Act). Indeed, Coinbase concedes that the district court had original jurisdiction to consider Plaintiffs' state law claims.[9] Because the district court had original jurisdiction over Plaintiffs' state law claims, it should consider them in the first instance on remand.

\* \* \*

We have considered the parties' remaining arguments and find them to be without merit. Accordingly, we **REVERSE** in part and **AFFIRM** in part the judgment of the district court and **REMAND** for further proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[9] Coinbase nevertheless argues that we should affirm the dismissal of the state claims because, "like Section 29(b), each relevant state statute requires contractual privity," and, "[p]ursuant to the terms of the [User Agreement], users transact with each other and not with [Coinbase]." Appellees' Br. at 56-57. But "[i]t is our general policy that the trial court should consider arguments—and weigh relevant evidence—in the first instance." *Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*, 11 F.4th 138, 143 (2d Cir. 2021) (internal quotation marks omitted).